## In re EQUITABLE TRUST CO. OF NEW YORK.

(Circuit Court of Appeals, Ninth Circuit. May 15, 1916.)

No. 2781.

JUDGES ⬤⇒53—DISQUALIFICATION—RIGHT TO ASSERT.

    Where, on the motion of petitioner, the District Judge was proceeding to decide the question whether, on foreclosure, an upset price, below which the property should not be sold, should be fixed, petitioner cannot have the judge removed by an affidavit charging bias and prejudice.

    [Ed. Note.—For other cases, see Judges, Cent. Dig. § 232; Dec. Dig. ⬤⇒53.]

Petition for Writ of Mandamus to the Judge of the District Court of the United States for the Second Division of the Northern District of California.

Petition by the Equitable Trust Company of New York, as trustee, for a writ of mandamus to be directed to William C. Van Fleet, Judge of the United States District Court. Writ denied.

See, also, 231 Fed. 571, —— C. C. A. ——.

Murray, Prentice & Howland, of New York City, and Jared How, of San Francisco, Cal., for petitioner.

Garret W. McEnerney and John S. Partridge, both of San Francisco, Cal., for respondents.

Byrne & Cutcheon, of New York City, and Charles S. Wheeler and John F. Bowie, both of San Francisco, Cal., amici curiæ.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. March 6, 1916, was the first day of the March term of the District Court for the Northern District of California, Second Division, over which Hon. William C. Van Fleet presides. Fifteen days before that, to wit, on the 21st of February, 1916, he had made an order directing that the Denver & Rio Grande Railroad Company and the Missouri Pacific Railroad Company be made parties defendant to and respectively interplead in a suit theretofore brought in said court by the Equitable Trust Company of New York, as trustee, against the Western Pacific Railway Company, to foreclose a first mortgage given by the latter company to the trust company to secure a bond issue of $50,000,000, and also enjoining the trust company from proceeding with a certain dependent suit it had theretofore brought in the state of New York in respect to some of the property covered by the mortgage.

Claiming that the order directing the making of the Denver & Rio Grande Company and Missouri Pacific Company parties to the suit and the injunctive order were beyond the power of the court to make, and were therefore void, the complainant in the suit, based upon a stipulation of all of the parties thereto purporting to authorize such course, moved the court on the 6th day of March, 1916, for the immediate entry of a decree in the cause in the terms of a form annexed to the stipulation, and, in the event of a denial of such immediate entry, that

the cause be set for hearing and for entry of the decree at such early day as the court should assign; Mr. How, the attorney for the complainant, saying, among other things:

"I move the court that this decree be entered forthwith, in the terms of the form attached to the stipulation; in the alternative, if that motion shall be denied, I move that the cause be set for hearing and for the entry of the decree at such early date as the court may assign. The affidavits which I produced before your honor are merely in support of our motion for a hearing at an early day and the entering of a decree at that time. If the court thinks it wants to consider the matter of an upset price, I should think, of course, it ought to be allowed that time, but I wanted to impress upon the court the urgency of the situation."

Four days thereafter, and while the motion was pending, to wit, March 10, 1916, the Equitable Trust Company appealed to this court from the injunctive part of the order of the District Court above referred to, and also applied to this court for a writ of prohibition to prevent the District Court from compelling the Denver & Rio Grande Railroad Company and the Missouri Pacific Railroad Company to interplead in the foreclosure suit, and also for a writ of mandamus directing the District Court to grant the motion of the complainant made to that court for the entry of a decree in the foreclosure suit in accordance with the stipulation referred to.

The records show that during the proceedings had before the District Court Judge Van Fleet became apprised of the applications that had been made to this court, postponed from time to time action upon the pending motion before him for the entry of a decree, and awaited the action of this court upon the applications made to it, and in the course of the discussion of the application so made to him for the immediate entry of a decree said, among other things:

"Should the Circuit Court of Appeals, for instance, determine either that this court has no power to bring in the Denver, or that the presence of the Denver here is not essential, there will be no difficulty whatsoever. We can proceed and dispose of this matter in a very short time. * * * If the Court of Appeals shall determine that this court is wrong in its view that contract B must be interpreted here, and may be disposed of like any other piece of physical property that is pledged under a mortgage, there will be no difficulty at all in wiping the slate very clean in a very quick and expeditious way, thus disposing of all the difficulties."

During the pendency of the applications to this court, and during the pendency of the motion made by the Trust Company to Judge Van Fleet on the 6th of March, 1916, for the immediate entry of a decree, to wit, on the 13th day of March, 1916, the Savings Union Bank & Trust Company of San Francisco, as the owner of 125 of the first mortgage bonds of the Western Pacific road and as the representative of the holders of 575 additional of the first mortgage bonds, filed in the District Court a petition in intervention, praying, among other things, that before the sale of any of the properties of the Western Pacific Company be ordered evidence be taken with respect to the value of the properties of that company, and an upset price be fixed below which the commissioner making the sale be not permitted to receive a bid therefor, which upset price be high enough to properly protect the interest of the interveners and of first mortgage bondholders

not parties to the plan of reorganization set forth in the opinion of this court handed down at 2 p. m. of the 29th day of March, 1916, after full hearing and consideration of the applications made to it. In the course of that opinion we held:

"That the District Court in its discretion has full power to make an order concerning an upset price upon the sale, if such procedure should be deemed desirable by the court. Of course, hearing may well be accorded to these petitioners and such others as may appear to have any interest in the proceeding for the purpose of aiding the court in ascertaining and determining what the upset price should be."

And summarizing the principal points involved we held and decided that:

"The trustee, Equitable Trust Company, had a right to proceed to foreclosure as it prayed against the Western Pacific. The Denver Company was not a necessary or proper party to such foreclosure proceedings, and, the Denver Company not being within the jurisdiction of the court and the court having no custody of its property, no order could be made compelling it to interplead in the foreclosure suit. The trustee had a right to begin action against the Denver Company in New York to enforce any rights accruing under contract B to the bondholders, and the District Court in California had no power to interfere with the trustee in proceeding with such action. That part of the order which would compel the Denver Company and the Missouri Pacific Company to become parties to interplead having been in excess of jurisdiction, writ of prohibition is properly invoked. U. S. v. Mayer, 235 U. S. 67, 35 Sup. Ct. 16, 59 L. Ed. 129; McClellan v. Carland, 217 U. S. 268, 30 Sup. Ct. 501, 54 L. Ed. 762; In re Rice, 155 U. S. 396, 15 Sup. Ct. 149, 39 L. Ed. 198. We shall deny the petition for a writ of mandamus, because every presumption is that the District Court, being advised of the views of this court, will proceed to give the parties full measure of relief.

"The order appealed from is reversed. Petitioner's application for writ of prohibition is granted. The application for writ of mandamus is denied."

It is manifest from that decision of this court that nothing remained for Judge Van Fleet to do but to fix the upset price (in the event he should find the case a proper one for such action) and to enter the decree agreed upon by all of the parties to the suit; this court denying the mandate asked for by the complainant to that end only because it felt assured that the judge of the District Court would promptly carry into execution the decision of this court, as, indeed, the records show he had declared his intention of doing, without being compelled to do so by writ of mandate. And that is exactly what he was proceeding to do, on the motion of the complainant itself, when interrupted by the filing of an affidavit of one of its chief officers, which the records show had been largely prepared during the time the complainant had been urging the District Court to enter a decree in its favor, and during the time it was seeking at the hands of this court a writ compelling him to do so. That affidavit, designed to disqualify Judge Van Fleet, was, according to the testimony of Mr. How, in preparation in San Francisco during the days of March 18, 19, and 20, 1916, during all of which time the complainant was maintaining before that judge a proceeding for the entry by him of a decree of foreclosure in the suit, and during which time it was maintaining in this court proceedings to compel him to do so. That affidavit, it appears from the records, was not completed until March 29, 1916, when it was executed in the city of

New York—the day that this court at 2 p. m. decided the applications above referred to that had been made to it. The affidavit appears to have been executed in duplicate, one copy of which was received here, according to the testimony of Mr. How, on Sunday, April 2, 1916, and the other in the first mail of Monday, April 3, 1916. On the last-named day it was filed in the District Court, and Judge Van Fleet was thereupon moved to proceed no further in the cause, and, instead, to certify the matter to the senior Circuit Judge of this circuit, to the end that he might designate another District Judge to take the place of Judge Van Fleet in the proceeding, by virtue of section 21 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1090 [Comp. St. 1913, § 988]), which reads as follows:

"Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be designated in the manner prescribed in the section last preceding, or chosen in the manner prescribed in section 23, to hear such matter. Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one such affidavit; and no such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith. The same proceedings shall be had when the presiding judge shall file with the clerk of the court a certificate that he deems himself unable for any reason to preside with absolute impartiality in the pending suit or action."

Judge Van Fleet having ruled that the affidavit had not been filed in time, that no good cause had been shown for the failure to file the same ten days before the commencement of the term, and also that the affidavit did not otherwise conform to the requirement of the statute, refused to make the order requested by the petitioner, which order, omitting the title of the court and cause, is in these words:

"An affidavit of personal bias and prejudice and application that another judge shall be designated for further proceedings in this action, accompanied by a certificate of counsel of record for plaintiff herein that such affidavit and application are made in good faith, having been filed by said plaintiff in this action, it is hereby ordered that the fact of the filing of such affidavit and application be entered on the records of the court and that an authenticated copy thereof shall be forthwith certified to the senior Circuit Judge for this circuit now present in the circuit, to the end that such proceedings may be had thereon as are provided by law."

Thereupon the present application was made to this court for a writ of mandate compelling Judge Van Fleet to proceed no further in the cause and to certify the matter to the senior Circuit Judge for his action. Like the Supreme Court in the case of Ex parte American Steel Barrel Company, 230 U. S. 35, 33 Sup. Ct. 1007, 57 L. Ed. 1379, we shall not pass upon the timeliness of the affidavit, nor upon the legal sufficiency of the facts and reasons therein stated as affording ground for the averment that "personal bias or prejudice" existed on the part of Judge Van Fleet, who decided against the petitioner on both of those propositions. Whether or not it was within his province to do so it is not necessary for us to decide, in the view we take

of the case, and therefore we pass that question also, and base our ruling denying the writ prayed for upon the ground that, when the charge of "personal bias or prejudice" on the part of the judge was first made by the petitioner, its motion that Judge Van Fleet proceed with the entry of a decree in accordance with the stipulation of the parties was still pending before him, which motion he was actually proceeding to execute in pursuance of the decision of this court made upon proceedings here taken by the petitioner to compel him to do so. The action of the trial judge thus set in motion and continuously prosecuted before him by the petitioner itself cannot, we think, be thus paralyzed. The basis of the disqualification prescribed by the statute upon which the petitioner relies is as stated by the Supreme Court in Ex parte American Steel Barrel Company, supra:

"That 'personal bias or prejudice' exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. It is a provision obviously not applicable save in those rare instances in which the affiant is able to state facts which tend to show not merely adverse rulings already made, which may be right or wrong, but facts and reasons which tend to show personal bias or prejudice. It was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise, but to prevent his future action in the pending cause. Neither was it intended to paralyze the action of a judge who has heard the case, or a question in it, by the interposition of a motion to disqualify him between a hearing and a determination of the matter heard. This is the plain meaning of the requirement that the affidavit shall be filed not less than ten days before the beginning of the term."

In that case the District Judge ruled that the affidavit presented to him was sufficient in law to make it his duty to proceed no further, and, acting upon that determination, certified his withdrawal and the affidavit to the senior Circuit Judge, that he might in the exercise of his jurisdiction under section 14 of the Judicial Code (Comp. St. 1913, § 981) designate another judge to proceed with the hearing of the case. In that connection the Supreme Court said:

"If Judge Chatfield had ruled that the affidavit had not been filed in time, or that it did not otherwise conform to the requirement of the statute, and had proceeded with the case, his action might have been excepted to and assigned as error when the case finally came under the reviewing power of an appellate tribunal. Henry v. Speer, 201 Fed. 869 [120 C. C. A. 207]; Ex parte Fairbank Co. (D. C.) 194 Fed. 978; Ex parte Glasgow, 195 Fed. 780, affirmed by this court in Glasgow v. Moyer, 225 U. S. 420 [32 Sup. Ct. 753, 56 L. Ed. 1147]."

And that:

"If the designation of Judge Mayer under these conditions was wholly beyond the judicial power of the senior Circuit Judge, his authority to make any order or decree acting thereunder might have been excepted to and thus made the subject of review in due course of law."

And, holding that the writ of mandamus would be granted by that court only when it is clear and indisputable that there is no other legal remedy, it discharged the rule.

The construction thus put by the Supreme Court upon the statute in question, applied to the facts above detailed, requires, in our opinion, a denial of the writ prayed for here.

Writ denied.