579 P.2d 568

**The STATE of Arizona, a body politic, Appellant,**

v.

**Esther SANCHEZ, Individually and as surviving parent of Rosendo M. Sanchez, Jr., Deceased, Appellee.**

**No. 2 CA–CIV 2669.**

Court of Appeals of Arizona, Division 2.

March 1, 1978.

Rehearing Denied April 11, 1978.

Review Denied May 9, 1978.

Bruce E. Babbitt, Atty. Gen., Chandler, Tullar, Udall & Redhair, Tucson by D. B. Udall, Sp. Asst. Atty. Gen., and W. Page Keeton, Associated Counsel, Austin, Tex., for appellant.

Law Offices of Richard D. Grand by Richard D. Grand, Thomas J. McHugh and James G. Heckbert, Tucson, for appellee.

OPINION

HOWARD, Judge.

The issue in this case is whether the trial court erred in allowing punitive damages to be assessed against the State of Arizona.

This is an action for wrongful death of the plaintiff's 20-year-old son who was killed on August 29, 1975 in an automobile collision involving a state vehicle operated by Joseph Noriega, an employee of the Arizona Highway Department. At the time of the accident, Joseph Noriega was intoxicated.

Noriega was a self-confessed alcoholic. During the five years he worked for the Arizona Highway Department, he was often absent from work as a result of being intoxicated the morning after a night's drinking.

In November of 1973, approximately two years before the collision, Noriega met with his immediate foreman, Tony Gracia, and the District Maintenance Supervisor, William White, to discuss his absences. At that time Gracia and White also discussed Noriega's alcoholism. They suggested that he contact Alcoholics Anonymous but made no record in his personnel file that he had a problem with alcohol. They permitted him to continue driving state vehicles.

On the day prior to the collision, Noriega visited a friend after work. After consuming a quart of beer at his friend's home, he went to a local bar in Tucson where he drank from 5:30 p. m. until 1 a. m. Thereafter he returned to his home where he consumed additional beer until retiring at 2 a. m.

When he woke up at 6 a. m., Noriega did not feel well. Upon arriving at work, he was ordered by the foreman, Tom Parrish, to drive a truck to Nogales to pick up a part. Noriega told Mr. Parrish that he had been up drinking all night and felt that he was in no condition to drive to Nogales. Notwithstanding that Parrish knew Noriega had a drinking problem and, in fact, had previously given Noriega information regarding alcoholic counseling, Parrish insisted Noriega drive to Nogales.

Upon arrival at the Highway Department yard in Nogales, Noriega was given the part requested. Although agents of the state in Nogales noticed that Noriega was acting strangely at the time, they did not question him or try to ascertain the reason for his strange behavior. After picking up the part, Noriega purchased more beer as he felt additional alcohol would make him feel better. He consumed 4 cans of beer before starting his return trip to Tucson.

Upon approaching the Amado turn-off northbound on U.S. Route 89, Noriega passed out at the wheel. His truck ran off the road to the right, overtook the Sanchez vehicle which had been northbound directly in front of Noriega, and struck the Sanchez vehicle as the truck came back onto the road. As a result, the Sanchez vehicle rolled over, killing plaintiff's son.

Officers of the Arizona Highway Patrol administered a field sobriety test to Mr. Noriega and determined that he was intoxicated. A blood sample revealed Noriega had a blood alcohol level of .23%.

This appeal was filed following a jury trial in which a verdict was returned in favor of the plaintiff as follows:

"1. Compensatory damages for the plaintiff ESTHER SANCHEZ and against the defendants JOSEPH NORIEGA and the STATE OF ARIZONA in the amount of $200,000.00.

2. Exemplary damages for the plaintiff ESTHER SANCHEZ and against the defendant JOSEPH NORIEGA in the amount of $25,000.00 on the issue of his wanton conduct.

3. Exemplary damages for the plaintiff ESTHER SANCHEZ and against the defendant STATE OF ARIZONA in the amount of $250,000.00 on the issue of its wanton conduct for the conduct of its employee JOSEPH NORIEGA.

4. Exemplary damages for the plaintiff ESTHER SANCHEZ and against the defendant STATE OF ARIZONA in the amount of $500,000.00 on the issue of its wanton conduct in the entrustment of its vehicle to the defendant JOSEPH NORIEGA."

After the judgment in this case, A.R.S. § 41-621 was amended. Subsection (H) now provides:

"The state and its departments, agencies, boards and commissions are immune

from liability for losses arising out of a judgment for willful and wanton conduct resulting in punitive or exemplary damages."

■ The statute cannot be applied retroactively in this case for two reasons. First, there is no provision for retroactivity in the statute. *State v. Stone,* 104 Ariz. 339, 452 P.2d 513 (1969). Second, a statute cannot be applied retroactively to impair a vested right. *County of Cochise v. Pioneer National Title Insurance Company,* 115 Ariz. 381, 565 P.2d 887 (App.1977). Appellee had a vested right to the judgment. Even though the above statute has been amended, it does not apply to municipal corporations, and thus this case takes on added significance.

■ *Stone v. Arizona Highway Commission,* 93 Ariz. 384, 381 P.2d 107 (1963), abrogated governmental immunity for tortious conduct. Appellee contends this puts the state on the same footing as private corporations which have been held liable in Arizona for punitive damages. *Southern Pacific Company v. Boyce,* 26 Ariz. 162, 223 P. 116 (1924); *Western Coach Corporation v. Vaughn,* 9 Ariz.App. 336, 452 P.2d 117 (1969).[1] The reason for allowing punitive damages against a corporation is the supposed deterrent effect. The allowance of such damages will encourage employers to exercise closer control over their servants for the prevention of outrageous torts. Prosser, supra, § 2.

Appellant contends that appellee is wrong in her interpretation of *Stone,* supra, and that in the absence of a specific statute authorizing punitive damages against the state, they cannot be recovered.

We do not believe that *Stone* is determinative of the issue here. It does no more than abrogate sovereign immunity. It does not answer the damages question. The issue thus becomes—is there a difference between the private corporation and the state which justifies awarding punitive damages

in the case of the private corporation but not in the case of the state? From the standpoint of the various activities in which the state engages and the exposure of the public to harm resulting therefrom, it is difficult to perceive a difference between a private corporation and the state. However, this does not end our inquiry.

■ The general rule is that a municipal corporation[2] cannot be held liable for punitive or exemplary damages in the absence of a specific statute authorizing them. *Fisher v. City of Miami,* 172 So.2d 455 (Fla. 1965); *Desforge v. City of West Saint Paul,* 231 Minn. 205, 42 N.W.2d 633 (1950); *Rascoe v. Town of Farmington,* 62 N.M. 51, 304 P.2d 575 (1956); *Clarke v. City of Greer,* 231 S.C. 327, 98 S.E.2d 751 (1957); *Lauer v. Young Men's Christian Association of Honolulu,* 557 P.2d 1334 (Hawaii 1976); *City of Gary v. Falcone,* 348 N.E.2d 41 (Ind.App. 3rd Dist. 1976); *Chappel v. City of Springfield,* 423 S.W.2d 810 (Mo.1968); *Brown v. Village of Deming,* 56 N.M. 302, 243 P.2d 609 (1952); *Foss v. Maine Turnpike Authority,* 309 A.2d 339 (Me.1973); *McHugh v. City of Wichita,* 1 Kan.App.2d 180, 563 P.2d 497 (1977); *Smith v. District of Columbia,* 336 A.2d 831 (D.C.App.1975); *Urban Renewal Agency of City of Aberdeen v. Tackett,* 255 So.2d 904 (Miss.1971); *Nixon v. Oklahoma City,* 555 P.2d 1283 (Okl.1976). See Note 22 Wash.Lee L.Rev. 126 (1965); Annot. 19 A.L.R.2d 903 (1951); 57 Am. Jur.2d, Municipal, School and State Tort Liability, §§ 318–322; contra: *Hennigan v. Atlantic Refining Company,* 282 F.Supp. 667 (E.D.Pa.1967), aff'd, 400 F.2d 857 (3 Cir. 1968).

Various reasons are given in the foregoing cases for denying punitive damages against the state or municipal corporation in the absence of a statutory authorization. One is that since punishment is the objective, the people who would bear the burden of the award—the citizens—are the same group who are expected to benefit from the

---

1. This is in accord with the majority of courts which have decided this issue. Prosser, law of Torts, § 2, (4th Ed. 1971).

2. For the purpose of deciding this case, we shall treat the term "municipal corporation" and the "state" as being synonymous.

public example which the punishment makes of the wrongdoer. Another reason is that the deterrent effect adds little justification because it is to be assumed that municipal officials will do their duty and if discipline of a wrongdoing employee is indicated, appropriate measures will be taken without a punitive award. A huge award against the municipal corporation would not necessarily deter other employees who would generally be unlikely to be able to pay a judgment assessed against them personally. A third reason is the rule which permits evidence of the wealth of a tortfeasor as a measure of the amount of punitive damages which should be awarded. The theory is—the wealthier the wrongdoer, the greater the award. Otherwise stated, a relatively small sum might be adequate to punish a common man whereas a much greater sum would be needed to punish a rich man. If this were allowed against municipalities, it would permit evidence of the unlimited taxing powers as a measure of a proper verdict. *Fisher v. City of Miami,* supra.

Some of these reasons apply equally to private corporations. Two of the reasons, the evidence of the unlimited taxing power of a municipal corporation, and the fact that the public would bear the burden of the award, are not applicable to private corporations. Appellee counters these two reasons by pointing out that in *Price v. Hartford Accident and Indemnity Company,* 108 Ariz. 485, 502 P.2d 522 (1972), our Supreme Court concluded that an insurance policy identical to that held by the state provides coverage for exemplary damages. Therefore, there cannot be an adverse financial impact upon the State of Arizona since the premium covering the verdict in the instant case has already been paid. Indeed, the holding in *Price v. Hartford Accident and Indemnity Company,* supra, is clear:

> "It is our holding that the premium has been paid and accepted and the protection has been tendered, and that under the circumstances public policy would be best served by requiring the insurance company to honor its obligation." 108 Ariz. at 488, 502 P.2d at 525.

As far as the unbridled taxing power of the state is concerned, appellee points to the case of *Ahmed v. Collins,* 23 Ariz.App. 54, 530 P.2d 900 (1975) wherein the court held that it was not necessary to introduce into evidence the wealth of the defendant in order to sustain an award of punitive damages. We note, however, that *Ahmed v. Collins,* supra, does not stand for the proposition that the wealth of the defendant cannot be introduced into evidence.

In *Price v. Hartford Accident and Indemnity Company,* supra, the issues were (1) whether it was against public policy to insure a wrongdoer for his liability for punitive damages and (2) whether the policy covered liability for such damages. Here, the issue, whether the state can be held liable for punitive damages, is quite different.

In *Price* the court set out its policy reasons for holding punitive damages were covered by the policy in the face of an argument that society would be punishing itself for the wrong committed by the insured. The court pointed out (1) that even though a driver is insured for punitive damages, he cannot engage in wanton conduct with impunity since it would subject him to criminal penalties and his premium and insurance rates would soar; (2) Hartford had voluntarily covered the insured's liability for punitive damages because of the policy provisions which agreed to pay all damages for which the insured was liable; (3) criminal penalties include possible loss of the insured's driver's license and compulsory attendance at traffic school; (4) punitive damages are designed to punish not only the offender but to serve as a deterrent to others since it is common knowledge that the vast majority of drivers do not carry million dollar liability policies; the possibility that punitive damages will exceed their policy limits will exercise a deterrent effect on them; and (5) it is the public policy of the State of Arizona that when an insurance company takes a premium for covering all liability for damages, it should honor its

obligation. This last reason given by the court in *Price* begs the question here.

The question boils down to this. Does the fact that the state can insure itself against liability for punitive damages eliminate the argument that allowing punitive damages against the state would put the burden of punishment upon the taxpaying citizens, the very persons who are supposed to benefit from the public example which punishment makes of the wrongdoer? We think not. It is foolish not to believe that the imposition of such damages upon the state or a municipal corporation would not result in increased premium rates, especially when its unlimited taxing power could be introduced into evidence. How much is it proper to assess a municipal corporation for punitive damages in order to bring the wrongful conduct to its attention and deter further conduct? There are other ways to deter wilful and wanton conduct on the part of the municipality. As is stated in *Chappell v. City of Springfield,* supra:

> "The theory that punitive damages serve as a deterrent to others adds little justification for the award against a municipality. It is assumed that public officials will do their duty, and if discipline of a wrongdoing municipal employee is indicated, appropriate measures are available through the electorate, or by superior officials responsible to the electorate, without recourse to punitive awards through the courts." 423 S.W.2d at 814.

Appellee contends that where exemplary damages are authorized by statute, public entities are subject to such damages on an equal basis with other defendants. As authority for this proposition, she cites *Myers v. City and County of San Francisco,* 42 Cal. 215 (1871); *Coffee County v. Parrish,* 249 Ala. 226, 30 So.2d 578 (1947); *Michaud v. City of Bangor,* 160 Me. 285, 203 A.2d 687 (1964); *Governale v. City of Owosso,* 59 Mich.App. 756, 229 N.W.2d 918 (1975); *City of Minneapolis v. Richardson,* 307 Minn. 80, 239 N.W.2d 197 (1976); 57 Am. Jur.2d, Municipal Tort Liability, § 320. Appellee then points to A.R.S. § 12–613 as mandating the award of punitive damages

and therefore reasons that under the foregoing cases, the state is liable for punitive damages. We do not agree.

First, A.R.S. § 12–613 states in part:

> "In an action for wrongful death, the jury *shall* give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default . . . ." (Emphasis added)

The fact that the statute employs the term "shall" does not render it mandatory for such term may be defined as "must" or "may" depending on the context of the provision and the intent of the drafters. *Village of Park Forest v. Fagan,* 64 Ill.2d 264, 1 Ill.Dec. 59, 356 N.E.2d 59 (1976); *Arkansas State Highway Commission v. Mabry,* 229 Ark. 261, 315 S.W.2d 900 (1958). We believe that the use of the word "shall" in our wrongful death statute is not mandatory but permissive. In *Downs v. Sulphur Springs Valley Electric Cooperative, Inc.,* 80 Ariz. 286, 297 P.2d 339 (1956), the court held that the wrongful death statutes in existence at that time did not provide for exemplary damages. The same year our legislature amended A.R.S. § 12–613 to add the language it now contains. We believe the intent of the legislature was to correct the deficiency recognized in *Downs,* supra, and merely authorized but did not mandate, a jury to award such damages.

Second, neither the cases nor the encyclopedic authority cited by appellee stand for the broad proposition which she has enunciated. Both *Michaud* and *Governale,* involved statutes providing for treble damages. *Michaud* makes it clear that the court rested its decision on the fact that it did not consider the statute as imposing punitive or exemplary damages. In fact, it recognizes the rule that punitive or exemplary damages are not recoverable against a municipality unless expressly authorized by statute. In *Governale* the issue of whether treble damages were in fact punitive damages was not even raised. In *Parr-*

*ish* the Alabama court was dealing with a wrongful death case. In Alabama, at least at that time, the only type of available damages was regarded as "punitive" there being no attempt to allow recovery on behalf of survivors for pecuniary or other losses. Moreover, simple negligence was the basis for the recovery. In other words, the survivors were afforded recovery that was designated "punitive". The statute was therefore construed as authorizing recovery against the local subdivision as well as against individuals and corporations.

In *Richardson,* supra, the Minnesota court was interpreting a civil rights statute prohibiting racial discrimination and the court concluded that the statute should be construed to authorize recovery against the state. Considering the fact that the Minnesota statute, Minn.Stat. Sec. 363.–03(4) was obviously enacted to prohibit public bodies from discriminating against a person because of race, color, creed, religion or national origin, it is easy to see how the court arrived at its decision.

Finally, in *Myers,* supra, the California court in 1871 was dealing with a wrongful death statute that allowed two types of recovery for wrongful death caused by simple or ordinary negligence. It provided for recovery of pecuniary damages and punitive damages, but no recovery for shock, grief or other kinds of losses. Since the actual damages were limited to "pecuniary losses" a punitive damages recovery was utilized as a basis for giving some substantial coverage for wrongful death where otherwise virtually no recovery could have been obtained, as in the case of a small child. This statute was construed, especially since it was made applicable to wrongful death caused by negligence, as authorizing a recovery against the state in order to provide the survivors an adequate remedy to compensate for actual losses suffered.

We conclude the trial court erred in allowing punitive damages to be awarded against the state.

The judgment against the state is modified by striking therefrom the award for punitive damages and is affirmed as modified.

HATHAWAY, J., and LLOYD FERNANDEZ, Superior Court Judge, concur.

NOTE: Chief Judge JAMES L. RICHMOND having requested that he be relieved from consideration of this matter, Judge LLOYD FERNANDEZ was called to sit in his stead and participate in the determination of this decision.