**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alfred Esteban AZHOCAR,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alfred Esteban AZHOCAR,**
**Defendant-Appellant.**

Nos. 76–3737, 77–3187.

United States Court of Appeals,
Ninth Circuit.

June 16, 1978.

As Amended on Denial of Rehearing and
Rehearing En Banc Sept. 6, 1978.

John J. McCabe, Jr., of Mitchell, Schmidt, D'Amico, McCabe & Stutz, San Diego, Cal., for defendant-appellant.

Stephen G. Nelson, Asst. U. S. Atty., (on the brief), Terry J. Knoepp, U. S. Atty., Stephen G. Nelson, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before CHAMBERS and CHOY, Circuit Judges, and FERGUSON,* District Judge.

CHOY, Circuit Judge:

In the first part of a bifurcated trial, a jury convicted Alfred Esteban Azhocar of conspiracy to import heroin and cocaine, a violation of 21 U.S.C. § 841, and of possession of cocaine with intent to distribute, a violation of 21 U.S.C. § 841(a)(1). Later, in a jury-waived trial using the evidence adduced at the preceding trial, he was found guilty of possession of a firearm by a convicted felon, a violation of 18 U.S.C. §§ 922(h), 924.

Azhocar appeals all judgments on the same grounds: first, that there was no probable cause for the police to stop and search the car driven by Patricia Azhocar; and second, that the trial judge should have recused himself because of personal bias and prejudice against the appellant. We affirm the judgment of the district court on both issues.

I. *Facts and Proceedings Below*

Appellant Azhocar, a convicted felon under California drug laws, was one of several suspected narcotics dealers under surveillance by the Drug Enforcement Agency (DEA) beginning in January, 1976. DEA agents observed him at various times in both Mexico and California with Geronimo Gutierrez-Sanchez, whom the DEA knew as a narcotics trafficker,[1] and with Refugio Salazar-Garcia and Francisco Lizzarga-Ozuna, both DEA fugitives. During the course of the surveillance Salazar introduced a DEA informant to Gutierrez, after which they discussed smuggling multi-ton quantities of marijuana into the United States from Mexico. On several occasions DEA agents had observed appellant, a convicted drug felon, meeting with Gutierrez, who was known to be a major drug trafficker, as well as with two other DEA fugitives. Telephone billing records showed a series of calls between appellant's house in California and locations in Tijuana where appellant, Gutierrez and Salazar had been seen.

In July, 1976, Patricia Azhocar, who was formerly married to appellant's cousin, was seen driving to a meeting with Salazar in Tijuana. Four days later, agents watching appellant's house in California saw Patricia arrive in the same car she had driven to Tijuana. She went into the house, returned to the car, removed a large bag from the trunk, and re-entered the house. An hour later, she left the house carrying a box and a bag under her arm, placed them in the car's trunk, and drove away.[2] DEA agents

---

* The Honorable Warren G. Ferguson, United States District Judge for the Central District of California, sitting by designation.

1. Among other things, the DEA was aware that Gutierrez was currently charged in Mexico with tax evasion involving millions of dollars made through narcotics dealings.

2. Evidence at trial revealed that appellant set up the meeting between Patricia and Salazar in Tijuana, that appellant directed her to deliver a package of cocaine to his house in California, and that while she was inside his house he weighed out and repackaged a portion of it, instructing Patricia to take the remaining cocaine with her.

in an unmarked car followed her. Realizing she was being followed, Patricia drove erratically for about twenty-five minutes before parking in a shopping center. Uniformed police officers then stopped her, searched the car's trunk, and found a quantity of cocaine.

Following later questioning at the DEA office, Patricia voluntarily and knowingly consented to a search of the spare tire of the car, which contained three and one-half pounds of cocaine, and of another vehicle containing three pounds of cocaine and three pounds of heroin.

Based on Patricia's information, a search warrant was issued for appellant's house which led to the seizure of marijuana, cocaine, and heroin, over $100,000 in cash, a .12 gauge shotgun, a military-type M–1 carbine, a loaded .38 snub-nosed revolver, a rifle, and drug paraphernalia.

At trial, appellant moved to suppress the evidence from all the searches as the product of the allegedly illegal initial search of the car Patricia was driving. He testified to his ownership of the car, thus establishing standing to challenge the search. The district court denied the motion.

## II. *Probable Cause for the Initial Search*

While warrantless searches are generally unreasonable, such searches of moving vehicles have often been approved because justified by exigent circumstances: the vehicle is mobile, its driver is alerted, and its contents may not be found again if a warrant is required. *See Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Thus, in *United States v. Abascal,* 564 F.2d 821, 828 (9th Cir. 1977), we stated that under the moving vehicle exception, all that is required to stop and search an automobile on the highway is probable cause to believe that it contains any type of contraband.

■ In applying this standard to the initial search, all facts known to the officers and all reasonable inferences that could be drawn from these facts prior to the stop and search must be considered. *United States v. Martin,* 509 F.2d 1211, 1213 (9th Cir.), *cert. denied,* 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975); *Rodgers v. United States,* 267 F.2d 79, 85 (9th Cir. 1959). The issue is a factual one, turning on the circumstances in each case.

■ The officers could reasonably have inferred from the totality of facts known to them that Patricia was transporting contraband at the time they stopped her. DEA agents knew that appellant, a convicted drug felon, had been meeting with Gutierrez and with two other drug traffickers: they knew that there had been telephone calls from appellant's residence to locations in Tijuana where he, Salazar and Gutierrez had been seen; they saw Patricia speak with Salazar, a DEA fugitive, in Tijuana; they observed as she delivered a large bag to appellant's house, and returned with a box and bag which she placed in the trunk of her car; and they saw her take evasive action when followed. These particular circumstances provided abundant probable cause to believe that a delivery of narcotics was being made. There was no error in denying appellant's motion to suppress.

## III. *Recusal*

Prior to his first trial, Azhocar moved to have the trial judge recuse himself pursuant to 28 U.S.C. § 144.[3] This statute provides for the assignment of a new judge where a party to the proceeding makes a

---

3. 28 U.S.C. § 144 provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

showing of the present judge's personal bias or prejudice in a timely and sufficient affidavit. Judge Thompson, the trial judge, held that Azhocar's affidavit of bias was legally insufficient, and refused to recuse himself. On appeal, Azhocar urges that this refusal was erroneous on four grounds.

■ A. *Assignment of § 144 motion to another judge for hearing.* According to appellant, the statutory command that once a timely and sufficient affidavit is filed the trial judge "shall proceed no further" with the case must be interpreted to mean that the judge cannot even rule on the sufficiency of the affidavit. The only issue the judge can decide, Azhocar argues, is whether or not the affidavit is timely made. Thus, appellant concludes that Judge Thompson's failure to assign the § 144 motion to another trial judge for a hearing was error.

This contention is without merit. *Berger v. United States,* 255 U.S. 22, 32–34, 41 S.Ct. 230, 65 L.Ed. 481 (1922), is the seminal case interpreting the bias statute. There, the Supreme Court held that the judge against whom an affidavit of bias is filed may pass on its legal sufficiency because, *inter alia,* "the reasons and facts for the belief the litigant entertains are an essential part of the affidavit, and must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *Id.* at 33–34, 41 S.Ct. at 233. Only after the legal sufficiency of the affidavit is determined does it become the duty of the judge to "proceed no further" in the case. *United States v. Montecalvo,* 545 F.2d 684, 685 (9th Cir. 1976); *Curry v. Jensen,* 523 F.2d 387, 388 (9th Cir.), *cert. denied,* 423 U.S. 998, 96 S.Ct. 428, 46 L.Ed.2d 373 (1975), *rehearing denied,* 423 U.S. 1081, 96 S.Ct. 871, 47 L.Ed.2d 93 (1976); *Undersea Engineering & Construction Co. v. ITT Corp.,* 429 F.2d 543, 545 (9th Cir. 1970). This is consistent with the language of the statute itself, which makes a timely and *sufficient* affidavit prerequisite to recusal.

Moreover, since the inquiry is addressed to the facial sufficiency of the affidavit— not to the truth or falsity of the facts stated therein, *see United States v. Montecalvo,* 545 F.2d at 685—the proposed "hearing" is unnecessary.

Finally, we note that while the statute undoubtedly permits referring the disposition of an affidavit of bias to another judge, *see Tenants and Owners in Opposition to Redevelopment v. Department of HUD,* 338 F.Supp. 29, 31 (N.D.Cal.1972), the adoption of such a procedure as a general rule would be unwise. Reference of § 144 motions to another judge would be cumbersome and would further delay an already slow judicial process. And as observed in *United States v. Mitchell,* 377 F.Supp. 1312, 1315–16 (D.D.C.1974), "[o]nly the individual judge knows fully his own thoughts and feelings and the complete context of facts alleged." This is a valid consideration, since inquiry into the circumstances surrounding the presumptively true allegations is often appropriate in determining whether they are such as would prevent a fair decision on the merits.[4] *See, e. g., Los Angeles Trust Deed & Mortgage Exchange v. SEC,* 285 F.2d 162, 176 (9th Cir. 1961) ("a thorough reading of the record" did not substantiate the affiant's position).

Accordingly, we conclude that Judge Thompson's consideration of the sufficiency of the § 144 affidavit was proper.

B. *Rulings adverse to appellant.* Appellant claims that certain rulings by Judge Thompson during the course of the proceedings showed bias. Appellant does not directly attack these rulings as constituting an abuse of discretion, and his argument that they support a claim of statutory bias fails on two grounds.

■ First, no timely and sufficient affidavit stating these claims was ever filed. Appellant's failure to follow these procedural requirements therefore defeats his charge of bias. *United States v. Anderson,* 561 F.2d 1301, 1302–03 (9th Cir. 1977).

---

4. *See Berger v. United States,* 255 U.S. 22, 33, 41 S.Ct. 230, 65 L.Ed. 481 (1922) and Part III B. *infra.*

■ Second, even if these claims now made on appeal had been included in a timely § 144 affidavit, they would be insufficient to satisfy the statute. Adverse rulings do not constitute the requisite bias or prejudice of § 144. *Berger v. United States*, 255 U.S. 22, 34, 41 S.Ct. 230, 65 L.Ed. 481 (1921); *Ex parte American Steel Barrel Co.*, 230 U.S. 35, 43–44, 33 S.Ct. 1007, 57 L.Ed. 1379 (1913); *Chessman v. Teets*, 239 F.2d 205, 215 (9th Cir. 1956), *vacated on other grounds*, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957); *Beecher v. Federal Land Bank*, 153 F.2d 987, 988 (1945), *cert. denied*, 328 U.S. 871, 66 S.Ct. 1364, 90 L.Ed. 1641 *rehearing denied*, 329 U.S. 819 (1956); *In re Equitable Trust Co.*, 232 F. 836, 840 (9th Cir. 1916).

There is thus no merit to appellant's claim of bias based on adverse rulings.

C. *Statements at bail hearing.* In his § 144 affidavit, Azhocar stated that Judge Thompson demonstrated bias and prejudice in his remarks at one of co-defendant Gutierrez's bail hearings. According to Azhocar, Judge Thompson, in considering an affidavit made by Azhocar in support of Gutierrez's motion for bail reduction, said that he would not believe anything Azhocar testified to, that Azhocar's testimony in and of itself would be enough to convict Gutierrez, and that Azhocar would not be believed no matter what he said.

While Judge Thompson's actual remarks[5] were ill-advised, and are not condoned, we believe his denial of appellant's motion for legal insufficiency of the affidavit of bias was proper.

■ *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966) and *Berger v. United States*, 255 U.S. 22, 33, 41 S.Ct. 230, 65 L.Ed. 481 (1922), are the leading cases interpreting the bias statute. *Grinnell* held that "[t]he alleged bias and prejudice to be disqualifying must stem from an *extrajudicial source* and result in an opinion on the merits on some basis *other than what the judge learned from his participation in the case.*" (Emphasis added.)

In *Grinnell*, Judge Wyzanski had stated: "Maybe you will persuade somebody else. And if you think so, all right. I just assure you it is a great ceremonial act, as far as I am concerned." The Supreme Court emphasized that "any adverse attitudes that Judge Wyzanski evinced toward the defendants were based on his study of the depositions and briefs," and that taken in context, his statement was "merely a terse way" of ruling on evidence after the lawyer had gotten on his nerves.

*Berger*, as noted *supra*, held that the judge against whom an affidavit is filed may pass upon its legal sufficiency because, among other reasons, it is an essential prerequisite to recusal that the facts alleged "give fair support" to the charge that the judge's attitude is one "that may prevent or impede impartiality of judgment." 255 U.S. at 33–34, 41 S.Ct. at 233. He may not, however, pass on the truth or falsity of the facts alleged. He can properly deny the affidavit for insufficiency if the facts, taken as true, do not provide fair support for the contention that statutory bias exists. *Id.* at 35, 41 S.Ct. 230.

■ Thus, to be legally sufficient, the affidavit must meet three requirements. It must state facts which if true fairly support the allegation that bias or prejudice stemming from (1) an extrajudicial source (2) may prevent a fair decision on the merits. The focus is not only on the source of the facts and their distorting effect on a deci-

5. THE COURT: And frankly, to be truthful with you, I wouldn't care what Mr. Alfredo Azhocar said in an affidavit. I wouldn't believe him if he said on a stack of Bibles. Call it what you will. That's the facts. Now, a jury might and that's a very good reason for not waiving the jury and I would encourage you not to. And I'm sure Mr. McCabe knows me better than to waive a jury in this case, but to be truthful with you, to exonerate your client by Alfred Azhocar is not the way to go. I think that man is going to hurt you more than he's going to help you.

MR. GOLDBERG: Well, there's nothing else, your Honor. That's the point. It's just . . .

THE COURT: Well, if nobody else convicted your client, Mr. Azhocar probably would just by his testimony for him, . . .

sion on the merits, as required by *Grinnell*, but also on (3) the substantiality of the support given by these facts to the allegation of bias, as required by *Berger*.

We believe Azhocar's affidavit is legally insufficient on each of these three grounds. First, there is simply no evidence in the affidavit that Judge Thompson's statement was based on an extrajudicial source. Azhocar's contention that the judge had not seen him previously except for brief court appearances is only minimally relevant to this point. As this Circuit noted in *United States v. Montecalvo*, 545 F.2d 684, 685 (9th Cir. 1976), a district judge may rely on facts contained in reports properly brought to his attention in the performance of his judicial duties as the basis for his remarks. Here the record supports the Government's claim that Judge Thompson had read everything that had been filed in the case at the time the remark was made.

Second, in context, Judge Thompson's statement was simply an indication of the weight he would give Azhocar's testimony at the time of Gutierrez's bail hearing based on what he then knew. . The remarks were made at Gutierrez's fifth bail review hearing, and Gutierrez was depending on Azhocar's affidavit to prevail. The remarks simply reflect Judge Thompson's inclination not to reduce Gutierrez's bail on the basis of an exculpatory affidavit by co-defendant Azhocar. They do not indicate that Judge Thompson would close his eyes and ears to other evidence later in Azhocar's trial bearing on Azhocar's credibility, or his guilt or innocence.

Third, Azhocar's claim that Judge Thompson's statement could not have "conceivably come from the judge's participation in the case" is conclusory. It does not indicate why the source is believed to be extrajudicial or what it might have been. Since Judge Thompson's remarks appear likely to have been based on information properly brought to his attention in the performance of his judicial duties, Azhocar's claim is insufficiently substantiated to support an allegation of statutory bias.

D. *"Maximum sentence" statement.* Azhocar also claimed in his affidavit that Judge Thompson stated that if convicted of the charges in the indictment, Azhocar would receive the maximum sentence. According to the affidavit, this claim was based on "advisement and belief" because Azhocar was not present at the bail hearing where the statements were allegedly made, and he did not have a transcript of the proceedings. The affidavit, however, specifically incorporates the transcript of the hearing.[6] As a result, the affidavit does no more than allege the actual statements in the record as facts constituting personal bias and prejudice. Since the transcript reveals no such statement, we must conclude from a reading of the affidavit as a whole that the "maximum sentence" statement is not asserted as a fact therein.

Even accepting the statement as a fact asserted in the affidavit, however, the assertion shares a common legal deficiency with the allegation concerning Judge Thompson's other statements at the bail hearing: there is no basis for a conclusion that the source of the alleged statement was extrajudicial. Thus, pursuant to *Grinnell*, this allegation is insufficient to show the personal bias or prejudice requisite under § 144.

## IV. *Conclusion*

Since we find that there was probable cause for the initial search of appellant's car, and since Judge Thompson properly determined that the affidavit of bias was insufficient, the judgments of the district court are

AFFIRMED.

---

**6.** The affidavit stated in part as follows:

I am compelled to state matters in this affidavit on advisement and belief because I was not personally present at the hearing and have not reviewed a transcript of the proceedings. A transcript of the proceedings has been requested from the official Court Reporter. By reference, I specifically incorporate the transcription of that proceeding when received as a part of my affidavit.