Lillian M. SHORE, and Andrea Shore, by and through her Guardian Ad Litem, Lillian M. Shore, Plaintiffs-Appellees,

v.

COUNTY OF MOHAVE, STATE OF AR-IZONA, Sheriff of Mohave County, Arizona, Defendants-Appellants.

No. 79–3453.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1981.

Decided May 11, 1981.

Rehearing and Rehearing En Banc Denied July 30, 1981.

Brian Kaven, Phoenix, Ariz., argued for defendants-appellants; Burch, Cracchiolo, Levie, Guyer & Weyl, P. A., Thomas G. Bakker, Phoenix, Ariz., on brief.

John W. Miner, Los Angeles, Cal., for plaintiffs-appellees.

Before KILKENNY and SNEED, Circuit Judges, and GRANT *, District Judge.

* Honorable Robert A. Grant, Senior United States District Judge for the District of Indiana, sitting by designation.

SNEED, Circuit Judge:

The plaintiffs, a California resident and her daughter, sued Mohave County and its Sheriff's Department for false imprisonment and malicious prosecution under Arizona law. The district court, acting under diversity jurisdiction, found the defendants liable and awarded the plaintiffs more than $125,000, including $25,000 in punitive damages. The defendants seek a new trial and they argue that the court erred in awarding punitive damages. We reject their arguments that they deserve a new trial, but we agree that punitive damages should not have been awarded.

## I. FACTS

The facts of this case, which are described in detail in the district court's opinion,[1] are astounding. Ms. Shore, of Sherman Oaks, California, ran into the rear end of an automobile stopped at a stop sign, causing minor damage, on Saturday morning, October 8, 1972, in Lake Havasu City, Arizona. Lieutenant Rathbone of the Mohave County Sheriff's Department arrested her for driving under the influence of intoxicating liquor. He sent her to a hospital in Kingman, about sixty miles away, for a blood alcohol test. That test indicated no detectable amount of alcohol, but the results were not reported to the police that week-end. Ms. Shore was placed in the Mohave County Jail in Kingman even though jail officials knew that she had enough money to satisfy the standing bail requirement for driving under the influence of intoxicating liquor. Her seven-year-old daughter Andrea was sent to a foster home. After a few hours in the "drunk tank," Ms. Shore was placed in a cell with other prisoners. She fell off a bunk in this cell, injuring her forehead, and had to be taken to a hospital and sutured. She was taken back to the jail and released at 10 p. m. Saturday.

On Sunday morning Ms. Shore and her daughter took a cab back to Lake Havasu City. She sought out Lieutenant Rathbone to obtain the return of her car. After he refused to return it, she fled the station. He pursued her, she fell to the ground, and he handcuffed her and brought her back to the station. The arrest record reports that she was charged with "sick and cared for." She was again taken to Kingman and placed in the "drunk tank," while Andrea was taken to a foster home. Ms. Shore's husband and another daughter flew to Lake Havasu City that night, obtained the car, and drove to Kingman where Ms. Shore was released on bail.

Ms. Shore later received a notice to appear for trial or forfeit the bail. Her attorney went to Kingman and obtained the results of the blood alcohol test. The action was dismissed for lack of evidence and the bail was returned.

The district court found the defendants liable for false imprisonment and malicious prosecution under Arizona law. The district court awarded Ms. Shore $1,551.24 as special damages, $75,000 as compensatory damages, and $25,000 as punitive damages. Andrea was awarded $25,000. The defendants do not argue that the findings of liability are erroneous as a matter of law. Instead, they seek a new trial because the district court was biased and because it refused to allow defendants' expert to give an opinion.[2] We reject their requests for a new trial. But we strike the award of punitive damages because we conclude that they may not be awarded against governmental bodies under Arizona law.

## II. DISCUSSION

A. *The Request for a New Trial*

1. *Bias*

The defendants cite a number of incidents, such as interrogation of witnesses by

---

1. *Shore v. County of Mohave*, 472 F.Supp. 1114 (D.Ariz.1979).

2. The defendants also argue that they deserve a new trial because probable cause existed for the initial arrest on Saturday morning and the district court might have awarded damages for events occurring at that time. But it was *after* Lieutenant Rathbone arrested Ms. Shore that the district court concluded that "all rational conduct ended." 472 F.Supp. at 1116. Therefore, this claim is meritless.

the judge, in support of their argument that they deserve a new trial because the district court judge was biased against them. Because there is no claim that the judge's bias was based on anything other than his evaluation of the witnesses and the record, we reject the defendants' request.

The defendants' primary complaint is that, after hearing the plaintiffs' case and Lieutenant Rathbone's testimony, the judge told counsel in chambers that he was not impressed with the defense case so far and that he would award substantial damages if he found for the plaintiffs. The parties then engaged in settlement discussions, but these proved fruitless, partly because the plaintiffs doubled their pretrial settlement demand. When the defendants moved for a mistrial the next day, the judge explained that he had not made up his mind concerning the case, but his comments were designed to induce a settlement. While his efforts to induce a settlement failed, his statement does not seem unreasonable or unusual in light of current district court practice. *See* Will, Merhige, and Rubin, *The Role of the Judge in the Settlement Process*, 75 F.R.D. 203 (1977).

Under 28 U.S.C. §§ 144 and 455, judges must remove themselves from cases if they have a personal bias, that is, a bias stemming from an extrajudicial source. *United States v. Sibla*, 624 F.2d 864, 869 (9th Cir. 1980); *United States v. Winston*, 613 F.2d 221, 223 (9th Cir. 1980), *United States v. Azhocar*, 581 F.2d 735, 739 (9th Cir. 1978), *cert. denied*, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1980). In *Azhocar*, we considered facts similar to those presented in this case. A criminal defendant argued that a judge should have removed himself because he reportedly said at a bail hearing that if convicted Azhocar would receive the maximum sentence. The court rejected the defendant's argument because a transcript of the hearing did not contain the alleged statement. 581 F.2d at 740. The court went on to state that even if the judge had made the statement it would not show bias requiring removal because there was no evidence that the bias stemmed from an extrajudicial source. *Id.*

■ The district court judge in this case showed no personal bias. Rather, his statement concerning damages was based on his reaction to the evidence. Therefore, the plaintiffs do not deserve a new trial because the judge was biased.

### 2. *The Expert Witness' Opinion*

A more difficult issue is posed by the district court's refusal to allow the defendants' expert witness, Dr. Maier Tuchler, to give his opinion concerning the effects of a drug Ms. Shore had taken. She was taking Elavil regularly at the time of the incidents leading to this case. Dr. Tuchler, a forensic psychiatrist, never examined Ms. Shore. He testified that Elavil is an antidepressant that could build up in a person's body, causing lack of coordination. Defense counsel asked Dr. Tuchler for his opinion as to whether a buildup of Elavil could have caused Ms. Shore to appear intoxicated on October 8 and 9, 1972. If Ms. Shore was suffering from an adverse reaction to Elavil, defense counsel argues, that might explain Lieutenant Rathbone's decisions to place her in the "drunk tank" on those days, or at least mitigate damages. But the district court severely limited Dr. Tuchler's testimony and refused to allow his opinion into evidence.

■ District courts have broad discretion under Rule 702 of the Federal Rules of Evidence concerning the admissibility of expert testimony. *United States v. Tsinnijinnie*, 601 F.2d 1035, 1040 (9th Cir. 1979); *Kline v. Ford Motor Co.*, 523 F.2d 1067, 1070 (9th Cir. 1975). And expert testimony in the form of an opinion is not needed when the trier of fact can understand the connection between the expert's testimony and the facts of the case. *See* 11 J. Moore and H. Bendix, *Moore's Federal Practice* § 702.-01[3] (1976). We do believe that the district court should have permitted defense counsel to examine Dr. Tuchler more extensively rather than abruptly cutting off the testimony. Since this was a bench trial, there was little danger under the circumstances that the court would have been unduly im-

pressed by the expert's testimony or opinion. After hearing the opinion, the court could have given it the weight it felt it deserved. *Fed-Mart Corp. v. United States*, 572 F.2d 235, 238 (9th Cir. 1978); *Security-First National Bank v. Lutz*, 322 F.2d 348, 355 (9th Cir. 1963); Fed.R.Civ.P. 52(a).

But we do not believe that the defendants deserve a new trial. The district court understood Dr. Tuchler's testimony and the inference defendants sought to have drawn from it. While the court should have given defense counsel more latitude, we cannot say that it abused its broad discretion by refusing to listen to Dr. Tuchler's opinion. The court overstated matters by concluding that the drug was not and could not have been in any way related to Ms. Shore's arrest. 472 F.Supp. at 1117. But, read in context, we believe the district court concluded that whatever effect the drug might have had in no way excused the treatment accorded Ms. Shore by the defendants. That conclusion is amply supported in the record.

### B. *Punitive Damages*

The district court's opinion does not discuss whether punitive damages may be awarded against governmental bodies under Arizona law.[3] The court presumably relied upon the case mentioned in the plaintiffs' trial memorandum, *Watzek v. Walker*, 14 Ariz.App. 545, 485 P.2d 3 (1971), in concluding that such an award was permissible. But in *Watzek* only $1 was awarded as punitive damages, and the award was affirmed without discussion. While this court normally defers to the district court's interpretation of state law in the state in which the court sits, *Sankovich v. Life Insurance Co.*, 638 F.2d 136, 138 n.1 (9th Cir. 1981), events subsequent to the trial make such deference inappropriate in this case.

A few days after the district court's opinion in this case, the Arizona Supreme Court, in *Welch v. McClure*, 123 Ariz. 161, 598 P.2d 980 (1979), stated: "The state cannot be held liable for punitive damages in the absence of specific statutory authorization." 598 P.2d at 983. The plaintiffs do not argue that there is specific statutory authorization for the punitive damage award in this case. Rather, they urge this court to distinguish *Welch* because it involved the state rather than a subdivision of the state such as Mohave County. They advance no reasons for such a distinction, however. *Welch* cited *State v. Sanchez*, 119 Ariz. 64, 579 P.2d 568 (App.1978) approvingly. 598 P.2d at 983. In *Sanchez*, the court noted that as a general rule municipal corporations cannot be held liable for punitive damages without express statutory authorization. 579 P.2d at 570. The reasons for not allowing awards of punitive damages against the state also apply to counties. Thus, it can be said with respect to both levels of government that enforced rectitude, resulting from the imposition of punitive damages, burdens, as well as benefits, the public. Also, at both levels the deterrence of punitive damages, which to be effective must be large in amount, may not be necessary to obtain a proper level of performance by government. Compensatory damages usually will be enough to insure that public officials properly perform their duties. *Id.* at 570–71.

When acting in a diversity case, this court seeks to ascertain the rule to which the highest court of the state would adhere. *Commercial Union Insurance Co. v. Ford Motor Co.*, 640 F.2d 210, 212–13 (9th Cir. 1981). We do not believe that the Arizona Supreme Court would distinguish this case from *Welch*. Therefore, the award of punitive damages was improper because there is no express statutory authorization for the award. We remand to the district court to have the award of punitive damages deleted from its judgment.

Affirmed in part, reversed in part, and remanded.

---

**3.** The plaintiffs assert that there is an individual defendant in this case, the sheriff of Mohave County on March 5, 1973, and that punitive damages may be awarded against him. Since the defendants' claim that no individual was ever served as required by Fed.R.Civ.P. 4(b) is uncontradicted, we conclude that the defendants against which judgments were entered are all governmental bodies.