837 P.2d 1166

**Kenneth Lee HAMPTON,**
**Plaintiff–Appellant,**

v.

**GLENDALE UNION HIGH SCHOOL DISTRICT, a political subdivision of the State of Arizona, Defendant–Appellee.**

**No. 1 CA–CV 90–454.**

Court of Appeals of Arizona,
Division 1, Department D.

April 9, 1992.

Review Denied Oct. 20, 1992.

Skarecky, Cales & Holder, P.A. by William W. Holder, Phoenix, for plaintiff-appellant.

Teilborg, Sanders & Parks, P.C. by David J. Damron, Phoenix, for defendant-appellee.

## OPINION

TAYLOR, Judge.

In this appeal, the parties ask us to decide whether Ariz.Rev.Stat.Ann. ("A.R.S.") § 15–544(C) requires a school district to give a preferred right of reappointment to a teacher it dismissed for economic or efficiency reasons when the dismissed teacher is hired by another school district before a reappointment position becomes available. We hold that the school district must comply with the statute by notifying the dismissed teacher of an open position, even if the teacher has obtained a teaching position in another district. Accordingly, we reverse the summary judgment granted in favor of appellee Glendale Union High School District (GUHSD) and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

Appellant Kenneth Lee Hampton was employed by GUHSD as a special education teacher for the school years 1986–87, 1987–88, and 1988–89. By letter dated April 6, 1989, GUHSD informed Hampton that the governing board of the district would be unable to renew his teaching contract for the 1989–90 school year due to a reduction of certificated staff necessitated by a reduction of enrollment and/or elimination of course offerings. The letter contained the following statement:

> Consistent with Arizona Revised Statutes and with the administrative guidelines for staff transfer, staff assignment and staff reduction, should a position become available in your teaching area for which you are qualified, you will be contacted on the basis of seniority to fill the position.

Thereafter, Hampton sought new employment. On June 28, 1989, he signed a contract for the 1989–90 school year with the Agua Fria School District ("Agua Fria"). During June 1989, Hampton spoke with Barbara Beery, GUHSD director of personnel, and told her that he had obtained employment with Agua Fria for the next school year.

In early August 1989, Beery learned of the availability of a GUHSD teaching position for which Hampton might be qualified. After contacting persons on the reduction-in-force list who were senior to Hampton, she placed a call to Hampton's residence but received no answer. Upon receiving no answer, she called Agua Fria to determine if Hampton had contracted with that district and was informed that he had done so.

Beery then moved to the next person on the list. No other effort was made to contact Hampton about the available position.

Although Hampton began his new job that fall, the Agua Fria governing board allowed him to resign from his contract during the 1989–90 school year when he had the opportunity to start a private school. The private school subsequently failed.

Hampton filed his complaint against GUHSD on January 22, 1990. He alleged that the district violated A.R.S. § 15–544(C) and breached its contract with him. Hampton subsequently filed a motion for partial summary judgment as to liability in which he argued that GUHSD had violated § 15–544(C) as a matter of law by failing to offer Hampton the position for which he was qualified. In response, GUHSD contended that it could not have offered the position to Hampton because if it had done so it would have risked liability to Agua Fria for tortious interference with a contractual relationship. GUHSD also argued that Hampton waived any right to reappointment in the 1989–90 school year by contracting to work for another school district and that he was no longer qualified for the open position at GUHSD because he had accepted a position with another district.

The trial court agreed with GUHSD. In denying Hampton's motion, the court commented:

> As to the facts of this case, the Court finds that the law does not require the defendant's school district to do a needless act. To require the defendant to make an offer of employment pursuant to statute to one who has entered into a valid and binding contractual obligation with another is not within the meaning of the above-cited statute. Further, it would constitute an unlawful interference with an existing contract and the Court further finds that the plaintiff, by entering into an employment contract with another, has waived the notice requirements of [A.R.S. § 15–544].

Based on this ruling, GUHSD moved for summary judgment. The trial court grant-ed the motion and entered judgment in favor of GUHSD. Hampton timely appealed from the judgment.

## DISCUSSION

■ The parties do not disagree on any of the material facts in this case; rather, their dispute focuses on the meaning and proper application of A.R.S. § 15–544(C). In these circumstances, we review whether the trial court, in granting summary judgment, correctly applied the law to the undisputed facts. *Long v. Buckley,* 129 Ariz. 141, 142, 629 P.2d 557, 558 (App.1981). Because the interpretation of a statute involves legal rather than factual questions, we are not bound by the trial court's construction of the law and thus conduct a *de novo* review of the statute and its application in the case before us. *Libra Group, Inc. v. State,* 167 Ariz. 176, 179, 805 P.2d 409, 412 (App.1991).

The statute at issue in this appeal, A.R.S. § 15–544(C), provides:

> A certificated teacher dismissed for reasons of economy or to improve the efficient conduct and administration of the schools of the school district shall have a preferred right of reappointment in the order of original employment by the governing board in the event of an increase in the number of certificated teachers or the reestablishment of services within a period of three years.

Hampton argues that under this statute, GUHSD was required to offer the open position to him. Hampton also argues that GUHSD may not rewrite the statute to give school districts the power to decide that there are situations in which it need not extend the "preferred right of reappointment."

As to GUHSD's contention that it was excused from compliance with A.R.S. § 15–544(C) based on its perceived risk of liability to Agua Fria for intentional interference with contract, Hampton argues that Agua Fria could not maintain such an action because it could not satisfy the elements required to establish intentional interference with contract. Hampton specifically notes that (1) Agua Fria would not be able to

show damages unless it were unable to replace Hampton with another teacher at the same or lower pay; (2) Agua Fria would not be damaged by GUHSD's offer unless Hampton accepted the offer; (3) GUHSD would not have intended to interfere with the relationship between Agua Fria and Hampton because its intent would have been to comply with the statute, and (4) GUHSD would not have done anything improper by making an offer that it was required by statute to make.

GUHSD responds that A.R.S. § 15–544(C) does not require a school district to give a certificated teacher a preferred right of reappointment if after dismissal the teacher signs a teaching contract with another district. GUHSD reasons that such a requirement would only create chaos and confusion between the school districts and that it would do nothing to further the legislative intent of protecting teachers from layoffs and insuring that they have a continuing opportunity to practice their profession.

GUHSD asserts that the term "shall" in the statute may be read in the directory rather than mandatory sense. GUHSD argues that a directory reading would avoid the absurd and harsh result that would occur if a district must offer a position to a teacher who has contracted with another district, thus engendering a fight between the districts for the teacher and disrupting the educational system. GUHSD further contends that A.R.S. § 15–544(C) should not be interpreted to require a school district to expose itself to the risk of liability for intentional interference with a contractual relationship. It disagrees with Hampton's assertions that Agua Fria would not have been able to win a lawsuit against GUHSD if GUHSD had offered the open teaching position to Hampton.

■ The cardinal rule of statutory construction is that the courts must primarily attempt to ascertain and give effect to the intent of the legislature. *Wyatt v. Wehmueller,* 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). We find in the legislative record no indication of the legislature's intent regarding the application of the pre-

ferred right of reappointment where the dismissed teacher has obtained employment with another district. In this situation, the most reliable indication of legislative intent is the language of the statute. *State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 594, 667 P.2d 1304, 1309 (1983). To determine legislative intent, we may also look to the context of the statute and its historical background, subject matter, effects, consequences, and purpose. *Wyatt,* 167 Ariz. at 284, 806 P.2d at 873.

■ Section 15–544(C) provides that a certificated teacher who is dismissed for economy or efficiency reasons *"shall* have a preferred right of reappointment in the order of original employment by the governing board...." (Emphasis added.) The use of the word "shall" indicates a mandatory intent by the legislature. *Insurance Co. of North America v. Superior Court,* 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990); *In re Guardianship of Cruz,* 154 Ariz. 184, 185, 741 P.2d 317, 318 (App.1987). GUHSD points out, however, that in some instances "shall" has been construed to indicate desirability, preference, or permission. *Arizona Downs v. Arizona Horsemen's Found.,* 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981). For example, in *Arizona Downs,* the court held that the term "shall" in the statute at issue was used in a directory sense rather than in a mandatory sense because the constitutionality of the statute would have been questionable if "shall" were read otherwise. *Id.* at 554–55, 637 P.2d at 1057–58.

■ Similarly, language that is mandatory in form may be deemed directory when the legislative purpose can best be carried out by such construction. *Department of Revenue v. Southern Union Gas Co.,* 119 Ariz. 512, 514, 582 P.2d 158, 160 (1978). In addition, "shall" does not render a provision mandatory if the context of the provision indicates that it should be read as "must" or "may." *State v. Sanchez,* 119 Ariz. 64, 68, 579 P.2d 568, 572 (App.1978). In *Sanchez,* for example, the statute at issue read in part that "the jury *shall* give such damages as it deems fair and just with reference to the injury...." *Id.* The

court held that this language authorized but did not mandate a jury award of damages. *Id.* This conclusion reflects the discretion the provision gives to the jury.

 The statute before us, however, does not give school districts discretion in offering a position to a laid-off teacher with a preferred right of reappointment. The statute directs that the dismissed teacher *shall* have a preferred right of reappointment. We believe the legislature intended this provision to be mandatory for several reasons.

First, the provision is part of a legislative effort to allow school districts to reduce staff when necessary for economic or efficiency reasons while still protecting the reinstatement rights of teachers who are dismissed through no fault of their own. This protection extended by the legislature would be severely undercut if the statute is given a directory interpretation that leaves reinstatement rights up to the discretion of school districts.

Second, the provision is stated from the perspective of teachers and not from the perspective of the school district. The statute gives a right to teachers that must be carried out by school districts rather than by directing school districts to give this right to its teachers. In other words, the legislature has given the right of preferred reappointment to dismissed teachers. To emphasize, the rights conferred by the legislation belong to teachers, not to school districts. School districts thus are charged with upholding this right and may not act in derogation of it.

Third, the language of the statute does not limit a teacher's preferred right in the event the teacher obtains other employment after dismissal, nor is there anything in the language that implies that school districts have the discretion to so limit the right. A strict construction of the statute is particularly compelling in light of Arizona's statutory scheme for providing tenure once a teacher has been employed by a district for three years. *See* A.R.S. § 15–538.01. The pitfall of allowing school districts to adjust the statute as GUHSD did is illustrated by Hampton's situation.

Hampton had worked for GUHSD for three school years and thus had attained tenure status. Hampton did not have tenure under his contract with Agua Fria. Hampton thus preferred reappointment to GUHSD with tenure and three years of seniority as opposed to starting over at Agua Fria with lower pay and no tenure. We do not believe the legislature intended to force dismissed teachers to choose between (1) maintaining the chance of being reappointed and retaining tenure by not accepting other teaching employment or (2) securing other teaching employment and consequently giving up the opportunity to be reappointed to the tenured position. Forcing such a dilemma, which we believe most teachers would resolve by accepting other employment and thus forfeiting their tenure, would be contrary to the protective intent of both A.R.S. § 15–544(C) and teacher tenure provisions.

The legislature specified that the preferred right of reappointment is to be given for three years after dismissal. This is a compelling indication that the legislature did not intend for the right to be limited to teachers who do not obtain other teaching employment after dismissal. The legislature would not expect a teacher to wait three years without employment to see if an offer from the former district would be forthcoming. The three-year provision thus indicates that the legislature knew there was the probability that a teacher would have new employment before reappointment was available but nevertheless chose not to limit the preferred right of appointment to teachers who remained unemployed.

 We also reject GUHSD's argument that it was entitled to decline to comply with the statute because it feared that it would be liable to Agua Fria for intentional interference with contractual relations. For intentional interference with contract to exist, the party who allegedly interfered must have acted improperly. *Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985). Speculation as to what might happen for complying with a law does not

release a person or entity from the mandates of the law. Furthermore, GUHSD could not have been faulted for doing what it had a legal obligation to do. In *Ulan v. Lucas,* 18 Ariz.App. 129, 130, 500 P.2d 914, 915 (1972), the court stated: "It is well-settled that where breach of a contract is caused by an act which a person has a definite, legal right to do without any qualification, there is no liability for inducing such breach." *See also Mac Enters. v. Del E. Webb Dev. Co.,* 132 Ariz. 331, 336, 645 P.2d 1245, 1250 (App.1982) (holding that no legal basis existed for alleged tortious interference with contract where appellant had the right and power to cancel appellee's lease). This rule is even stronger where, as here, GUHSD has not just a definite, legal right to offer a position to a dismissed teacher but has a definite, legal *obligation* to do so.

■ Furthermore, A.R.S. § 15–545 protects both the district that offers a position to the dismissed teacher and the district with which the teacher has newly contracted. Section 15–545 provides:

A certificated teacher shall not resign after signing and returning his contract, unless the resignation is first approved by the governing board. A teacher who resigns contrary to this section shall be deemed to commit an unprofessional act and, upon request of the governing board, shall be subject to such disciplinary action, including suspension or revocation of certificate, as the state board of education deems appropriate.

Thus, if a dismissed teacher who has signed a contract with another district receives an offer from the previous employer district, the burden is on the teacher to obtain approval to resign the new position. If approval is not given, the teacher's only other means of being free to accept the reappointment position would be to resign without approval, thus committing an unprofessional act with the risk that his or her teaching certificate could be revoked.

■ GUHSD also argues that Hampton waived his preferred right of reappointment when he accepted other employment. We disagree with this argument for much

the same reasons discussed above. We do not believe the legislature intended to require a dismissed teacher to choose between (1) finding a new job and giving up rights earned with his or her previous employer and (2) remaining unemployed in hopes that a position would become available with the district from which the teacher was dismissed. Such an interpretation would penalize the dismissed teacher who aggressively seeks new employment. We find nothing in the statute that allows the district to conclude that a teacher has waived the preferred right to reappointment by accepting another position. *Cf. Stevens v. School Bd. of Indep. Sch. Dist. No. 271,* 296 Minn. 413, 208 N.W.2d 866 (1973) (holding that teacher did not waive his claim for reinstatement after dismissal merely because after his discharge he taught in another school district under one-year contracts).

■ We likewise reject GUHSD's argument that Hampton was no longer "qualified" for the open position once he accepted a teaching contract with another district. GUHSD's reduction in force letter to Hampton promised that "should a position become available in your teaching area for which you are qualified, you will be contacted on the basis of seniority to fill the position." Clearly, this statement refers to whether the teacher would be qualified by training and experience to teach the subject involved in the open position. We reject any construction that would suggest that a dismissed teacher is no longer qualified if he or she accepts other employment.

■ Hampton argues that the statutory preferred right of reappointment is part of his contract with GUHSD such that a violation of the statutory right also constitutes a breach of contract. This court, in *Carlson v. School Dist. No. 6,* 12 Ariz.App. 179, 182, 468 P.2d 944, 947 (1970), stated that the terms of an annual written teaching contract are not confined to the provisions of the contract but also include any pertinent statutory provisions in effect at the time the parties entered into the agreement. In light of this pronouncement, we conclude that by failing to comply with

A.R.S. § 15–544(C), GUHSD also breached its contract with Hampton.

In summary, we conclude that, as a matter of law, GUHSD violated A.R.S. § 15–544(C) and breached its contract with Hampton. We therefore reverse the trial court's grant of summary judgment in favor of GUHSD and remand with directions to the trial court to enter judgment in favor of Hampton on his motion for partial summary judgment as to liability, and for further proceedings consistent with this opinion.

Hampton has requested an award of attorney's fees incurred in this appeal pursuant to A.R.S. § 12–341.01. We grant this request. Hampton may establish the amount of the fee award by complying with Rule 21, Arizona Rules of Civil Appellate Procedure.

GRANT and TOCI, JJ., concur.