SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| ALEX GONZALES, a married man, )<br><br>       Plaintiff/Appellee, )<br><br>)<br><br>)<br><br>v. )<br><br>)<br><br>CITY OF PHOENIX, a municipal )<br>corporation; JAMES J. FINNERTY, )<br><br>)<br><br>      Defendants/Appellants. )<br><br>)<br>_____ ) | Supreme Court<br>No. CV-01-0170-PR<br><br>Court of Appeals<br>Division One<br>No. 1CA-CV98-0700<br><br>Maricopa County<br>Superior Court<br>No. CV-95-14110<br><br>**O P I N I O N** |

Appeal from the Superior Court of Maricopa County
No. CV-95-14110

The Honorable Christopher M. Skelly, Judge

**AFFIRMED AND REMANDED WITH INSTRUCTIONS**

_____

Court of Appeals, Division One
Memorandum Decision
**VACATED**

_____

DEBUS, KAZAN & WESTERHAUSEN, LTD.                    Phoenix
    by   Larry L. Debus
        Tracey Westerhausen
          and
Leslie O'Hara
Attorneys for Appellee

JONES, SKELTON & HOCHULI                              Phoenix
    by   William R. Jones, Jr.
        Randall H. Warner
Attorneys for Appellants

_____

**J O N E S, Chief Justice**

## INTRODUCTION

¶1      Alex Gonzales, manager of the Central Pawn Store in Phoenix, was charged with one count of trafficking in stolen property and one count of theft.  The trial court dismissed both counts with prejudice after the state determined there was no reasonable likelihood of conviction.  Gonzales sued the City of Phoenix and James Finnerty, a detective with the Phoenix Police Department, alleging malicious prosecution.  The jury returned a verdict in favor of Gonzales for $1.4 million.  The trial court denied defendants' motion for judgment notwithstanding the verdict (JNOV).[1]  In a split memorandum decision, the court of appeals reversed, holding as a matter of law that the defendants had probable cause to believe Gonzales committed the underlying criminal offenses.  We granted review to decide whether the court of appeals applied the correct legal standard.

## STANDARD OF REVIEW

¶2      A trial court's denial of a motion for JNOV will be reversed only if it reflects a manifest abuse of discretion.  *See*

---

[1] A Motion for Judgment Notwithstanding the Verdict (JNOV) is referred to under the current rule as a motion for judgment as a matter of law (JMOL).  Ariz. R. Civ. P. 50.  Counsel for the parties, as well as the trial court and the court of appeals, use the old terminology.  Accordingly, for purposes of uniformity, this court elects to use the old terminology – *judgment notwithstanding the verdict.*

*Hutcherson v. City of Phoenix*, 192 Ariz. 51, 53, 961 P.2d 449, 451, ¶¶12-13 (1998); *Blakely Oil, Inc. v. Wells Truckways, Ltd.,* 83 Ariz. 274, 278, 320 P.2d 464, 466 (1958).  In reviewing a jury verdict, we view the evidence in the light most favorable to sustaining the verdict, and if any substantial evidence could lead reasonable persons to find the ultimate facts sufficient to support the verdict, we will affirm the judgment.  *Hutcherson,* 192 Ariz. at 53, 961 P.2d at 451, ¶13.  We have jurisdiction pursuant to article VI, § 5(3) of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) section 12-2102 (2001).

FACTUAL AND PROCEDURAL HISTORY

**A.   Facts**

¶3        On January 11, 1994, Robert Dovilla offered to sell a set of Ping golf clubs to Central Pawn.  Dovilla was quoted a price of $160.00, but, before proceeding with the proposed transaction, a store clerk identified Dovilla as a person who had previously sold a stolen generator to the store.  The clerk notified another employee who called the Phoenix Police Department's pawn detail to report the situation and to determine if the clubs were stolen.  A detective at the pawn detail ran the serial numbers through its database, but the clubs were not listed as stolen; therefore, the employee was told that the store could purchase the clubs.

¶4        While the employee was on the phone, the clerk began

filling out a transaction ticket. In order to have sufficient time to obtain relevant police information on stolen property, store policy was to stall a questionable customer by beginning routine paperwork and obtaining the seller's signature on the ticket. After obtaining Dovilla's signature, the employee confronted him about the stolen generator transaction. Initially, Dovilla denied any knowledge of the generator. He then changed his story and asked the employee if he was going to get paid. The employee replied that the store needed to sort everything out before finalizing the purchase. Dovilla then talked to Gonzales. Gonzales testified that Dovilla asked to speak with the owner, but when he was told that the owner was unavailable, Dovilla left the store, leaving the clubs behind. As a result, Gonzales told the employee to place a ten-day hold ticket on the golf clubs pursuant to A.R.S. section 44-1624(F),[2] and to store them in a secure location.

¶5    Later the same day, Dovilla returned to the store to reclaim the clubs. Gonzales refused his request and invited him to call the shop owner or the police pawn shop detail to discuss the situation. Later in the week, the store sent the original transaction ticket with Dovilla's signature to the pawn shop

_____

    [2] The applicable statute provided: "The pawnbroker shall retain any property obtained by good faith outright purchase in its original form for ten days after the original transaction date."

detail. The words "stolen property" were crossed out based on the information furnished by the police detail that the clubs were not listed as stolen.

¶6        The following week, James Finnerty, a detective with the Phoenix Police Department, went to the pawn shop after being notified that a portion of the transaction ticket had been crossed out. He questioned the employee about the clubs and asked to see a copy of the ticket. Finnerty told store employees, including Gonzales, that the golf clubs had not been placed on an official police hold. Other events on that day are disputed. Gonzales testified that Finnerty tore the tag off the clubs and told him he could proceed to sell them. This testimony was corroborated by other store employees who noticed the tag was missing after Finnerty left the store. Finnerty denied this, but a fellow police officer, contradicting Finnerty, testified that Finnerty had in fact admitted to him that he told Gonzales to sell the clubs.

¶7        Finnerty later called the store and asked why the store had purchased golf clubs they suspected were stolen. Gonzales informed Finnerty that the store did not purchase the clubs, even though the ticket indicated a purchase price of $160. Finnerty told Gonzales that he was placing a ninety-day police hold on the clubs. Finnerty then ran a second check on the clubs and discovered that a set of Ping clubs had been reported stolen the day Dovilla attempted to make his sale.

¶8        Finnerty later interviewed Dovilla, who admitted involvement in the generator and golf club transactions but denied knowing the items were stolen. Dovilla told Finnerty the store had indicated it would offset the value of the golf clubs against the loss for the stolen generator. He also stated that three employees had a conference behind the counter before quoting him the price of $160.

¶9        Two days later, Finnerty returned to the store with his partner. Finnerty questioned Gonzales about the earlier generator transaction and whether the store intended to offset the loss. Gonzales told Finnerty that he was not present when the generator incident took place and that the store would attempt to sell the clubs only if they were not stolen. However, when Finnerty appeared before the grand jury, he testified to the contrary, that during the interview, he told Gonzales that he, Gonzales, "had every reason in the world to believe those golf clubs . . . were stolen," to which Gonzales allegedly responded,"absolutely."

¶10       Based on Finnerty's testimony, the grand jury indicted Gonzales on one count of reckless trafficking in stolen property and one count of theft. A person who recklessly traffics in stolen property commits second degree trafficking. A.R.S. § 13-2307(A). Theft can occur in various ways. A person who "knowingly controls the property of another with the intent to deprive the other person

of such property" commits theft, as does a person who controls another's property "knowing or having reason to know" that it was stolen. A.R.S. § 13-1802(A)(1) and (5). After certain evidentiary rulings by the trial judge in the criminal prosecution, the state moved for dismissal. On April 3, 1995, the trial court dismissed both counts with prejudice.

**B.    The Malicious Prosecution Action**

¶11      Gonzales brought the instant civil complaint against the City of Phoenix and Finnerty, alleging malicious prosecution. The court submitted the issue of probable cause to a jury, which awarded Gonzales $1.4 million. After the judgment was entered, defendants filed the motion for JNOV, asserting that probable cause existed as a matter of law to support the initiation of criminal proceedings against Gonzales. The trial judge denied the motion and defendants appealed.

**C.    Opinion of the Court of Appeals**

¶12      The court of appeals reversed the judgment. A majority of the panel concluded as a matter of law that the underlying criminal action was supported by sufficient evidence of probable cause. The majority determined that the issue whether defendants' JNOV motion was properly denied would best be resolved under a probable cause analysis, ruling that the existence of probable cause is a question of law to be determined *de novo* by the

reviewing court without deferring to the findings of the trial court.   Relying on a few discrete facts, the majority held that evidence of probable cause was sufficient to support the underlying criminal charges.   In dissent, Judge Garbarino argued that the majority ignored the requirement that the facts must be viewed in the light most favorable to Gonzales, the non-moving party.

### DISCUSSION

## A.   Probable Cause -- The Standard

¶13      To prevail on a malicious prosecution claim, a plaintiff must prove that the underlying criminal action was brought without probable cause.   In the context of malicious prosecution, probable cause is defined as "a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused is guilty of the offense. . . .   The test generally applied is:   upon the appearances presented to the defendant, would a reasonably prudent man have instituted or continued the proceeding?"  *McClinton v. Rice*, 76 Ariz. 358, 367, 265 P.2d 425, 431 (1953) (citations omitted).

¶14      Generally, the court decides as a matter of law whether the facts are sufficient to establish probable cause.   However, when conflicting probable cause evidence exists, the court may submit the issue to the jury in the form of a hypothetical question.  *Bradshaw v. State Farm Mut. Auto. Ins. Co.,* 157 Ariz.

-8-

411, 419, 758 P.2d 1313, 1321 (1988) ("[T]he court may instruct the jury hypothetically, telling them what facts will constitute probable cause.") (citations omitted); *Sarwark Motor Sales, Inc. v. Woolridge,* 88 Ariz. 173, 177-78, 354 P.2d 34, 36-37 (1960) (setting forth two methods of instructing the jury).[3]

¶15     The probable cause evidence in the present case was disputed.  Gonzales and Finnerty offered conflicting versions of what had actually taken place during various exchanges among Finnerty, Gonzales, and Central Pawn's other employees.  Given this dispute, the trial court properly submitted the issue to the jury. In reaching the verdict, the jury necessarily found the probable cause evidence insufficient to support the underlying criminal charges.  Following the jury's determination, the trial court effectively sustained the verdict when it denied the defendants' motion for JNOV.  *See Hutcherson,* 192 Ariz. at 53, 961 P.2d at 451, ¶¶12-13.

¶16     The majority of the court of appeals utilized a *de novo*

---

[3] The trial court did not frame the issue in the form of a hypothetical; instead, the court instructed the jury as to probable cause, in general terms.  Neither party objected to the final form of the instructions given to the jury.  Rule 51(a), Ariz. R. Civ. P.  Because neither party objected, any error is waived unless the instruction constituted fundamental error. *State v. Schrock,* 149 Ariz. 433, 440, 719 P.2d 1049, 1056 (1986).  There is no fundamental error here, however, because the instruction did not misstate the applicable law, and the instructions were not misleading or confusing. *See State v. Bass*, 198 Ariz. 571, 576-77, 12 P.3d 796, 801-02, ¶17-18(2000); *State v. Gallegos,* 178 Ariz. 1, 10, 870 P.2d 1097, 1106 (1994).

standard of review to determine the existence of probable cause as a matter of law. Use of the *de novo* standard was improper inasmuch as the facts presented to the jury were in dispute. As suggested by the court of appeals dissent, the majority presumed incorrectly on this record that probable cause is a legal issue solely for the court to decide. *Bradshaw,* 157 Ariz. at 419, 758 P.2d at 1321. Thus, the majority improperly substituted its view of the evidence for that of the jury. In considering whether sufficient proof exists to support a jury verdict, an appellate court looks to the broad scope of the trial and does not re-weigh the evidence on review. *City of Glendale v. Bradshaw*, 114 Ariz. 236, 238, 560 P.2d 420, 422 (1977).

**B. The Jury Verdict Was Supported By Substantial Evidence**

¶17     The record reflects that at the time Gonzales was indicted, he may have suspected the goods were stolen. Gonzales testified, however, that he acted upon his suspicion by following all protocols set by statute, by the police pawn shop detail, and by the pawn shop. He also testified that he was told by police to sell the clubs because the clubs were not listed as stolen. Importantly, this testimony was corroborated by Finnerty's fellow officer, who testified that Finnerty admitted that he had in fact told Gonzales to sell the clubs. Presumably, this testimony weighed heavily on the "no probable cause" verdict. Evidence was

also presented that during the hold period the clubs were not offered for sale by any employee, that Gonzales refused two different offers to buy them, and that he did not attempt to sell the clubs even after he was told he could do so by Finnerty.

¶18    The evidence was also disputed regarding Dovilla's attempted sale of the clubs to the pawn shop. Dovilla had claimed earlier that the employees had a conference behind the counter, quoted the selling price of $160, and then purchased the clubs. In contrast, Gonzales testified that at the time the price was quoted, he did not suspect the clubs were stolen, did not know Dovilla's history, and did not know the true value of the clubs. There was also conflicting evidence regarding Gonzales' knowledge as to whether the golf clubs were stolen, that is, whether Finnerty actually told the store to sell the clubs, whether the employees had a conference before quoting the price, and whether the store would sell the clubs to offset the generator loss.

¶19    The jury could reasonably infer from this evidence that while Gonzales may have suspected that the clubs were stolen, he nevertheless did not recklessly traffic or knowingly control stolen goods. In addition, the jury apparently found Gonzales' testimony more credible than Finnerty's. By its verdict, the jury rejected the assertion that there was probable cause to charge Gonzales. Ample evidence supports the jury's determination on this issue. Therefore, applying the correct standard, we view the evidence in

the light most favorable to upholding the verdict. So viewed, the evidence was legally sufficient for a jury determination of no probable cause. Accordingly, the trial judge did not abuse his discretion in denying the Motion for JNOV.

**CONCLUSION**

¶20     We find no reversible error in the trial court proceedings. We vacate the memorandum decision of the court of appeals and affirm the judgment of the trial court. This case is remanded to the trial court with instructions to reinstate the jury verdict and to enter judgment thereon.

_____

Charles E. Jones
Chief Justice

CONCURRING:

_____
Ruth V. McGregor, Vice Chief Justice

_____
Stanley G. Feldman, Justice

_____
Thomas A. Zlaket, Justice

_____
William E. Druke, Judge, Court of
 Appeals, Division Two

    NOTE: By the recusal of Justice Frederick J. Martone,
    William E. Druke, a judge of the Court of Appeals,
    Division Two, was designated to sit in his stead.