IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| CHAD WHITE and MARSHA WHITE, | ) | |
| natural children of JOHN ALVIN | ) | 2 CA-CV 2006-0207 |
| WHITE, | ) | DEPARTMENT B |
| | ) | |
| Plaintiffs/Appellants, | ) | O P I N I O N |
| | ) | |
| v. | ) | |
| | ) | |
| GREATER ARIZONA BICYCLING | ) | |
| ASSOCIATION, an Arizona corporation, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF SANTA CRUZ COUNTY

Cause No. CV 02-035

Honorable James A. Soto, Judge

REVERSED AND REMANDED

Block Grynkewich, P.C.
  By Gary S. Grynkewich                                          Tucson

and

Copple Boehm & Murphy, P.C.
  By Steven D. Copple and S. Christopher Copple                  Tucson
                                      Attorneys for Plaintiffs/Appellants

Goering, Roberts, Rubin, Brogna, Enos &
Treadwell-Rubin, P.C.
  By Scott Goering and Kristin A. Green                          Tucson
                                        Attorneys for Defendant/Appellee

B R A M M E R, Judge.

¶1        Appellants Chad and Marsha White appeal from the trial court's denial of their motion for a new trial on the issue of damages, made pursuant to Rule 59, Ariz. R. Civ. P., 16 A.R.S., Pt. 2, in their wrongful death action against appellee Greater Arizona Bicyclists Association ("GABA"). The trial court ruled the jury could properly decide Chad and Marsha had suffered no compensable loss despite finding GABA liable for the death of their father, John White, notwithstanding GABA's failure to contest Chad's and Marsha's evidence. We reverse.

## Factual and Procedural Background

¶2        Although the facts are essentially uncontested, "[w]e view the facts and the reasonable inferences therefrom in the light most favorable to upholding the jury's verdicts." *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, ¶ 3, 92 P.3d 882, 885 (App. 2004). On

2

October 14, 2001, John participated in a bicycling event organized by GABA. During that event, while he was attempting to cross a cattle guard in the road, John's front bicycle wheel fell into a vertical gap in the guard. John was thrown forward from his bicycle and struck his head on the ground upon landing. He was airlifted to a hospital, but was pronounced dead approximately one hour and twenty minutes after the accident.

¶3         John's wife, Elaine, and his adult children, Chad and Marsha, filed a wrongful death action alleging the Arizona Department of Transportation ("ADOT") and GABA had been negligent. The plaintiffs stipulated to the dismissal with prejudice of their claim against ADOT and proceeded to trial on their claim against GABA. At trial, Chad testified he missed his father, had had "quite a few dreams about [his father]" since the accident, and in the time before his father's death, "was learning a lot more" from his father than he ever had before. He also testified that, when he found out about the accident, he had to be placed on oxygen because he "wasn't really breathing and sort of passed out." Marsha testified her father "helped [her] out all the time" and "[w]hen [she] needed help with things . . . [she] could talk to him." She further stated that, since her father's death, she "feels like there is a part of [her] missing."

¶4         Marsha also testified that her mother had "physical problems," including fibromyalgia, diabetes, and fatigue; that John had "always [been] there for [Elaine]"; and that Marsha now has "to help [Elaine] out with everything that [John] ha[d] helped her out with" previously, such as laundry, cleaning, and errands. Chad testified Elaine "gets upset very

3

easily" since John's death. GABA did not cross-examine Chad or Marsha and offered no witnesses or evidence rebutting their testimony.

¶5        The jury determined GABA was liable for John's death and awarded $250,000 to Elaine but nothing to Chad or Marsha. It allocated fifty percent of the fault for John's death to ADOT as a nonparty and twenty-five percent each to John and GABA. Chad and Marsha then filed a Rule 59 motion for a new trial on the amount of damages, arguing the jury's failure to award them any damages was contrary to the "uncontroverted evidence that [Chad and Marsha] were in fact damaged." The trial court denied the motion, stating it was "within the jury's discretion to determine what amount of damages, if any, should have been awarded to Chad and Marsha." This appeal followed.

**Discussion**

¶6        Chad and Marsha contend on appeal that the trial court erred in denying their motion for a new trial on the issue of damages. "We review the denial of a motion for new trial . . . for an abuse of discretion." *Mullin v. Brown*, 210 Ariz. 545, ¶ 2, 115 P.3d 139, 141 (App. 2005). Chad and Marsha argue the jury was required to award them some damages because the evidence of their emotional loss was uncontested. "[I]f any substantial evidence could lead reasonable persons to find the ultimate facts sufficient to support the [jury's] verdict, we will affirm the judgment." *Gonzales v. City of Phoenix*, 203 Ariz. 152, ¶ 2, 52 P.3d 184, 185 (2002).

¶7 Arizona's wrongful death statutes, A.R.S. §§ 12-611 through 12-613, permit "the surviving husband or wife, child, [or] parent" of a decedent to bring an action to recover damages on account of that decedent's death "caused by wrongful act, neglect or default," §§ 12-611, 12-612. Section 12-613 addresses the measure of damages for wrongful death and states: "[T]he jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default." Such damages may include a child's "loss of love, affection, comfort, guidance and companionship which [the child] would have received." *S. Pac. Transp. Co. v. Lueck*, 111 Ariz. 560, 573, 535 P.2d 599, 612 (1975); *Sedillo v. City of Flagstaff*, 153 Ariz. 478, 480, 737 P.2d 1377, 1379 (App. 1987) (damages for wrongful death "can include allowances for loss of companionship, comfort and guidance").[1]

¶8 On appeal, Chad and Marsha rely solely on *Sedillo*, decided by Division One of this court. There, a jury had found the City of Flagstaff liable for the wrongful death of Tony Sedillo. 153 Ariz. at 480, 737 P.2d at 1379. It awarded damages to the decedent's widow and two minor children, but awarded no damages to his mother and his adult children. *Id.* "The evidence concerning the decedent's close family relationships was not impeached,

---

[1]The parties agree the jury was properly instructed to "decide the full amount of money that will reasonably and fairly compensate" Chad and Marsha for their "loss of love, affection, companionship, care, protection and guidance"; "pain, grief, sorrow, anguish, stress, shock, and mental suffering"; and lost services. The jury instructions, however, are not contained in the record on appeal, nor are the jury verdicts.

contradicted or refuted by any substantive evidence offered by the City." *Id.* at 481, 737 P.2d at 1380. The plaintiffs also presented unimpeached testimony concerning "the present value of decedent's potential future income." *Id.* On appeal, Division One determined the trial court had abused its discretion in denying a new trial on the issue of damages to those plaintiffs to whom the jury had not awarded damages, *id.* at 482-83, 737 P.2d at 1381-82, reasoning that "ample testimony demonstrated that each of the plaintiffs suffered emotional and possibly financial losses due to Tony's death" and that "those [plaintiffs] who did not receive any damages were . . . entitled to some damages in light of the evidence established at trial and by virtue of their status as statutory beneficiaries."[2] *Id.* at 482, 737 P.2d at 1381.

¶9 Chad and Marsha argue *Sedillo* is "squarely on all fours with the present case" because "there was no impeachment, contradiction or refutation of the evidence of [their] close family relations with John." In response, GABA argues *Sedillo* is distinguishable because the plaintiffs in that case, unlike Chad and Marsha, "proved specific pecuniary losses" from the decedent's death, and evidence of financial loss is required, relying on *Quinonez v. Andersen*, 144 Ariz. 193, 696 P.2d 1342 (App. 1984). We disagree. There was no evidence presented in *Sedillo* that the plaintiffs to whom the jury awarded no damages were financially dependent on the decedent, only that he would have provided financial support "'if they needed it'" or if they had attended college. 153 Ariz. at 482, 737 P.2d at

---

[2]The court also ruled the trial court had erred in denying additur or a new trial to those plaintiffs that had been awarded some damages. *Sedillo v. City of Flagstaff*, 153 Ariz. 478, 482, 737 P.2d 1377, 1381 (App. 1987).

6

1381. The court in *Sedillo* described the plaintiffs' financial losses as merely "possibl[e]," but did not similarly qualify their emotional loss. *Id.* Therefore, we conclude the court in *Sedillo* did not rely on the evidence of the plaintiffs' economic loss in deciding they were necessarily entitled to some damages.

¶10 Nor does *Quinonez* support GABA's position. Although Division One of this court stated in *Quinonez* that damages in a wrongful death action are apportioned "by the individual pecuniary loss suffered by each [beneficiary]," it did not rule that evidence of economic loss is required in order to recover under the wrongful death statute. 144 Ariz. at 196, 696 P.2d at 1345. It instead determined the required apportionment permitted an individual statutory beneficiary to receive a new trial on the issue of damages in which other beneficiaries would not participate. *Id.* Indeed, nothing in *Quinonez* suggests the plaintiff sought damages for emotional loss; he instead presented evidence of "economic loss by reason of his wife's death." *Id.* at 198, 696 P.2d at 1347. Moreover, it is established law in Arizona that a party may recover for noneconomic losses in a wrongful death action. *See Lueck*, 111 Ariz. at 573, 535 P.2d at 612. And nothing in *Sedillo* suggests we should distinguish between emotional or economic loss for the purpose of applying its holding.

¶11 GABA also argues the court's holding in *Sedillo* depended on Division One's conclusion that "the jury may have improperly considered comparative negligence principles when it determined the awards." 153 Ariz. at 482, 737 P.2d at 1381. GABA asserts "there is no concern that the jury [in this case] based its award on improper considerations of

7

comparative fault." Assuming, arguendo, that the jury was properly instructed on issues of comparative fault, we do not agree the holding in *Sedillo* depended on the mere possibility the jury improperly considered comparative negligence in calculating damages. The *Sedillo* court's concern the jury might have improperly considered comparative negligence principles was "[d]ue to the extremely low damage awards," *id.*; therefore, the court clearly was referring to those plaintiffs who had been awarded some compensation, but not to those plaintiffs who received no damage award at all.[3]

¶12        GABA asserts the evidence of emotional loss in *Sedillo* was stronger than the evidence of Chad's and Marsha's emotional loss. We agree with Chad and Marsha, however, that *Sedillo* does not "create[] some type of threshold test with . . . regard to the quantum of love and affection between . . . family members which must be met" before *Sedillo*'s holding applies. Division One in *Sedillo* based its decision instead on the absence of any controverting evidence "and by virtue of [the plaintiffs'] status as statutory beneficiaries." *Id*. at 482, 737 P.2d at 1381. The strength of Chad's and Marsha's testimony may be relevant to the amount of damages they should be awarded, but not whether they should recover damages at all. *Sedillo* requires they be awarded "some damages." *Id.*

¶13        GABA additionally contends the word "shall" in § 12-613 is not mandatory, but permissive, and therefore does not require the jury to award damages, relying on *State*

---

[3]The only plaintiff in *Sedillo* whose alleged negligence arguably contributed to the decedent's death was awarded some damages. 153 Ariz. at 480, 482, 737 P.2d at 1379, 1381.

*v. Sanchez*, 119 Ariz. 64, 68, 579 P.2d 568, 572 (App. 1978) (§ 12-613 "merely authorize[s] but d[oes] not mandate . . . a jury to award . . . damages"). *Sanchez*, however, addressed whether punitive damages could properly be awarded against the state in a wrongful death action, not whether it was within the jury's province to award no damages. 119 Ariz. at 68, 579 P.2d at 572. Moreover, nothing in *Sanchez* suggests the evidence of damages was uncontested, unlike in *Sedillo* and the matter before us. Therefore, *Sanchez* is distinguishable and does not control here. Additionally, *Sedillo* does not necessarily require a jury to award damages to a statutory beneficiary in a wrongful death action upon finding liability, but does so only when that claimant's evidence of loss is uncontested.

¶14　　　For the reasons stated above, we agree with Chad and Marsha that *Sedillo* is, in all relevant ways, indistinguishable from this case. *Sedillo* does not permit a jury, upon finding a defendant liable in a wrongful death action, to fail to award some damages to a claimant when that claimant's evidence of loss, economic or otherwise, is uncontested. And GABA has not argued *Sedillo* is wrongly decided, either in its briefs or at oral argument in this court. "Absent a decision by the Arizona Supreme Court compelling a contrary result, a decision by one division of the Court of Appeals is persuasive with the other division." *Scappaticci v. Sw. Sav. & Loan Ass'n*, 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983). Therefore, we consider *Sedillo* to be "'highly persuasive and binding, unless we are convinced that [it is] based upon clearly erroneous principles, or conditions have changed so as to render [it] inapplicable.'" 135 Ariz. at 461, 662 P.2d at 136, *quoting Castillo v. Indus.*

9

*Comm'n*, 21 Ariz. App. 465, 471, 520 P.2d 1142, 1148 (1974). In view of the deference we give prior decisions of this court and GABA's lack of argument that *Sedillo* is wrongly decided, we are hesitant to address whether *Sedillo* is good law. However, considering our dissenting colleague's well-reasoned criticism of *Sedillo* and the close issue presented in this case, we address the question.

¶15         The dissent argues *Sedillo* "is not well grounded in any authority and appears to be an anomaly in Arizona law," focusing primarily on the *Sedillo* court's failure to address the deference we give juries in making damage determinations. We agree it is a jury's role to determine the amount of damages. *See Larsen v. Decker*, 196 Ariz. 239, ¶ 28, 995 P.2d 281, 287 (App. 2000) ("[A] damages award is within the jury's province."). This role is of particular importance where the jury must determine appropriate damages for emotional loss. *See Hernandez v. State*, 128 Ariz. 30, 32, 623 P.2d 819, 821 (App. 1980) ("Translation into dollars of the loss of companionship, affection, and society, and the anguish the parents experienced as a result of their daughter's death is peculiarly the jury's function."). Moreover, we recognize that we review a trial court's decision on a motion for new trial for an abuse of discretion because, "like the jury, it has had the opportunity to hear the evidence and observe the demeanor of witnesses." *Mammo v. State*, 138 Ariz. 528, 533-34, 675 P.2d 1347, 1352-53 (App. 1983).

¶16         And we note that, contrary to Chad and Marsha's contention at oral argument, unlike in a traditional negligence case, damage to the plaintiff is not an element of liability

10

in a wrongful death action. *Cf. Quinonez*, 144 Ariz. at 196, 696 P.2d at 1345 (wrongful death action has one plaintiff and one judgment; damages are then apportioned to statutory beneficiaries); *Vivian Arnold Realty Co. v. McCormick*, 19 Ariz. App. 289, 294, 506 P.2d 1074, 1079 (1973) (because "damages are an element of a cause of action for negligence, nominal damages cannot be awarded where there is a failure to prove those damages"). Instead, once a jury determines the defendant is liable for a wrongful death, it then, pursuant to § 12-613, determines "fair and just" damages "to the surviving parties" as defined by § 12-612. Thus, damages may not be presumed from the finding of liability. Admittedly, the majority in *Sedillo* addressed none of these critical issues. We do not agree, however, that its holding is clearly erroneous.[4] *See Scappaticci*, 135 Ariz. at 461, 662 P.2d at 136.

¶17        The discretion given juries is not unfettered. *Cf. State v. Watson*, 7 Ariz. App. 81, 88, 436 P.2d 175, 182 (1967) ("While complete uniformity in verdicts [for wrongful death] can never be achieved, there must be some limits to the unevenness that will be tolerated."). Nor may we uphold a jury verdict in the absence of evidence in the record that supports its conclusion. *Villegas v. Bryson*, 16 Ariz. App. 456, 459, 494 P.2d 61, 64 (1972) (if there is "no evidence to support the verdict the trial court should vacate the judgment and order a new trial"). We find no Arizona authority holding that a fact-finder may arbitrarily

[4]Although *Sedillo* has never been cited for its holding, that does not mean it is clearly erroneous. And, although a denial of review has no precedential value, *Morgan v. Carillon Investments, Inc.*, 207 Ariz. 547, n.1, 88 P.3d 1159, 1162 n.1 (App. 2004), our supreme court declined to review the decision when requested.

11

disregard a witness's testimony—instead, a fact-finder's decision to do so must have some record support. As Division One of this court stated in *Carabetta v. Industrial Commission*, 12 Ariz. App. 239, 242, 469 P.2d 473, 476 (1970):

> We recognize that there are many Arizona decisions . . . involving both work[ers'] compensation and civil actions which state as a general proposition that the trier of fact may disregard the uncorroborated testimony of an interested party. However, an examination of these decisions shows that they do not stand for the proposition that the trier of fact may arbitrarily and without reason reject such testimony. In these cases the testimony of the interested party was either in the nature of opinion evidence or there was some other evidence before the court which cast suspicion or created doubt concerning the testimony of the interested party.

*See also Rately v. Indus. Comm'n*, 74 Ariz. 347, 349-50, 248 P.2d 997, 998 (1952) ("[T]he trier of the facts is the judge of the witness' credibility and is not required to accept the uncontradicted evidence of an interested party, but there are exceptions. The trier of the facts may not arbitrarily reject such uncontradicted evidence when nothing intrinsic in the evidence itself or extrinsic in the circumstances casts suspicion thereon."); *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 1, 4, 730 P.2d 178, 181 (App. 1985) (holding that, in the absence of contradictory testimony, "a reasonable person would not be justified in rejecting [the witness's] unimpeached testimony"); *Hunter v. Indus. Comm'n*, 130 Ariz. 59, 61, 633 P.2d 1052, 1054 (App. 1981) (fact-finder "may not arbitrarily disregard the only reasonable inference which can be drawn from uncontradicted testimony").

12

¶18 Chad's and Marsha's testimony was unequivocal, uncontradicted, utterly consistent both internally and with the other testimony in the record, and clearly described compensable emotional loss. As we noted in our recitation of the facts, Chad testified he thought his relationship with his father "was really good. I miss not having him around any more." He also described recurring dreams about his father since his father's death and admitted those dreams "cause[d] [him] problems." And he testified his father was teaching him "how to keep the house going, and about vehicles, and I was learning a lot more from him th[a]n I ever was before." As we previously stated, Chad testified further that, when he heard about the accident, he suffered an emotional response so severe that he had to be placed on oxygen because he "wasn't really breathing and sort of passed out." The parties agree the jury was instructed that loss of companionship and guidance was compensable, as was "pain, grief, sorrow, anguish, stress, shock, and mental suffering." Chad's testimony clearly described these kinds of compensable harms.

¶19 Similarly, Marsha testified that she relied on her father for assistance and advice, stating "he helped [her] out all the time. When I needed help with things, you know, I could talk to him." Indeed, when asked to describe what "it meant to [her] to lose [her] father," she had difficulty continuing her testimony, and the trial court asked her if she "need[ed] a break." As we have noted, she testified the loss of her father made her feel "a part of [her] [was] missing." Thus, like Chad, Marsha described a loss of companionship and parental guidance, as well as pain and sorrow.

13

**¶20** In its closing argument at trial, GABA made no attempt to discredit or minimize Chad's and Marsha's testimony. Indeed, GABA's counsel stated, "There is nothing that I can say here, and I wish there was, but there is really not, . . . to mitigate the loss [to] these children." GABA's counsel continued, "[I]t is only right that we acknowledge this loss." Nor does GABA argue on appeal that Chad's or Marsha's testimony was equivocal, inconsistent, or unbelievable. Although GABA correctly notes that Chad and Marsha emphasized their mother's loss over their own, that alone did not permit the jury to disregard the evidence of their loss.

**¶21** In support of its position that the jury was free to disregard Chad's and Marsha's testimony, the dissent relies, in part, on the *Revised Arizona Jury Instructions* (Civil) (4th ed. 2005) (RAJI).[5] Those instructions permit a jury to accept or reject all or part of a witness's testimony and to determine the credibility of witnesses, considering, inter alia, "the quality of his/her memory; the witness' manner while testifying; [and] whether he/she has any motive, bias or prejudice." RAJI Prelim. 5. Assuming, arguendo, however, that the jury was given similar instructions here,[6] these instructions do not permit a jury to arbitrarily disregard a witness's testimony. As we have noted, a jury's verdict must be supported by the

---

[5]These instructions are created by the State Bar of Arizona and, as the dissent correctly notes, are not approved by our supreme court. *See State v. Logan*, 200 Ariz. 564, ¶ 12, 30 P.3d 631, 633 (2001).

[6]The preliminary jury instructions are not contained in the record on appeal. GABA's counsel asserted at oral argument that the standard preliminary instructions were given.

14

evidence. *See Villegas*, 16 Ariz. App. at 459, 494 P.2d at 64. Given this rule, a jury's decision to disregard testimony must have some support.

¶22 Nor do we hold, as the dissent suggests, that factors such as the demeanor and motive of witnesses are "superfluous" because the jury is "obligated to accept any statement not explicitly contradicted by another concrete piece of evidence." There is no need for directly contradicting evidence for a jury to disregard testimony. However, there must be support in the record, however slight, for a jury's decision to disregard a witness's testimony. *See Carabetta*, 12 Ariz. App. at 242-43, 469 P.2d at 476-77. If we permit a jury verdict to stand based purely on speculation that the witness's demeanor led the jury to disregard that witness's testimony—and, here, there are two such witnesses—we see no way to distinguish between that jury and a jury that has acted arbitrarily. Thus, if we are to engage in any meaningful review of a jury's verdict, the verdict must have some support in the record—we should not speculate that reasons for the jury's verdict, although found nowhere in the record, must nevertheless have been present. Notably, GABA does not argue that Chad's and Marsha's demeanor on the stand permitted the jury to disregard their testimony. Indeed, it identifies nothing in the record before us that would justify the jury's disregarding Chad's or Marsha's testimony. *See id.*

¶23 The dissent cites several cases for the general proposition that a jury may disregard the testimony of an interested witness. Although we do not disagree with that sensible rule, we are not persuaded those cases render Division One's holding in *Sedillo*

15

erroneous. Although it is a jury's role to determine credibility, those cases do not hold a jury may do so arbitrarily. Instead, the facts of those cases contain clear reasons for the fact-finder to disregard the relevant testimony and are therefore distinguishable from the matter before us.

¶24        In *Estate of Reinen v. Northern Arizona Orthopedics, Ltd.*, 198 Ariz. 283, ¶¶ 11-12, 9 P.3d 314, 318 (2000), a medical malpractice action, our supreme court stated the jury was "not compelled to believe the uncontradicted evidence" of the defendant doctor who testified he would not have changed the plaintiff's treatment had he examined the plaintiff. The plaintiff's expert witness, however, testified a different treatment from what the defendant doctor ordered was necessary, and had the defendant doctor examined the plaintiff and correctly treated him, his injuries might have been averted. *Id.* ¶¶ 10, 13. Although the expert witness's testimony did not directly contradict the testimony of the defendant doctor that he would not have changed his treatment plan, it certainly cast doubt on the defendant doctor's credibility. Thus, unlike here, in *Estate of Reinen*, there was a reason apparent from the record that would have permitted the jury to disregard the defendant doctor's testimony.

¶25        In *Nystrom v. Massachusetts Casualty Insurance Co.*, 148 Ariz. 208, 214, 713 P.2d 1266, 1272 (App. 1986), Division One of this court stated that, although "a trial court in civil cases may not arbitrarily reject testimony from a disinterested and unimpeached witness, the trier of fact is not bound by uncontradicted testimony from an interested witness." (Citation omitted.) The appellate court there, however, was discussing a

16

credibility determination the trial court had had no reason to make at the time of trial, and it directed the trial court to make the determination on remand if necessary. *Id.* Moreover, there were numerous facts in *Nystrom* tending to cast doubt on the witness's credibility, including evidence that he had applied for life insurance policies without disclosing the medical conditions for which he was seeking disability insurance coverage. *Id.* at 210, 713 P.2d at 1268. Consequently, we are hesitant to rely on the *Nystrom* court's statement suggesting a finder of fact may "arbitrarily" disregard the testimony of an interested witness when the facts of that case clearly demonstrate the fact-finder did not do so, and even if it had, the record supported that conclusion. *Id.* at 214, 713 P.2d at 1272.

¶26        The dissent also relies on *Premier Financial Services, Inc. v. Citibank (Arizona)*, 185 Ariz. 80, 86, 912 P.2d 1309, 1315 (App. 1995), which states, "a trial court is not bound to accept even the uncontradicted evidence of a disinterested party." Like *Estate of Rienen* and *Nystrom*, however, that case is readily distinguishable. In that case, Division One of this court utilized the procedure described in *Torosian v. Paulos*, 82 Ariz. 304, 313 P.2d 382 (1957). *Premier Fin. Servs., Inc.*, 185 Ariz. at 84, 912 P.2d at 1313. In *Torosian*, our supreme court stated that "badges of fraud," or "'facts which throw suspicion on a transaction, and which call for an explanation,'" although not "'conclusive proof,'" "'may furnish . . . a reasonable inference of fraud.'" 82 Ariz. at 312, 313 P.2d at 388, *quoting Humbird v. Arnet*, 44 P.2d 756, 761 (Mont. 1935). The court in *Premier Financial Services* noted: "It is apparent from an examination of the record in this case that there were several

17

'badges of fraud' casting suspicion about whether a fraudulent conveyance had taken place." 185 Ariz. at 85, 912 P.2d at 1314. Thus, given the presence of this inference, it was clearly appropriate for the fact-finder to conclude the testimony of the garnishees was insufficient "to dispel the inference of fraud," and the trial court "did not err in concluding that the transfer . . . was a fraudulent conveyance." *Id.* at 86, 912 P.2d at 1315. Therefore, again, unlike here, there was evidence in the record—the badges of fraud—permitting the fact-finder to disregard the witnesses' testimony that there was no fraud.

¶27 We disagree with the dissent's suggestion that *Quinonez* supports the trial court's determination here. In that case, Division One of this court upheld a jury verdict awarding no damages to the husband of the decedent. 144 Ariz. at 198, 696 P.2d at 1347. Although the dissent states that the husband's evidence of economic loss was uncontested, the facts of that case demonstrate otherwise. The court noted that the decedent had stated she planned to divorce her husband and that, although the husband "did present expert testimony showing economic loss by reason of his wife's death," "[t]he evidence . . . showed that [their] children were now in the home of a relative and that no charges were being made to [the husband] for this service." *Id.* at 198, 696 P.2d at 1347. These facts would certainly permit a jury to disregard the husband's evidence of economic loss.

¶28 The dissent also asserts "the jury could have inferred that only Elaine, and not the children, suffered a significant loss." We agree that Chad's and Marsha's testimony may fairly be described as lukewarm. And we agree with the dissent that it was their burden to

18

demonstrate damages. *See Patania v. Silverstone*, 3 Ariz. App. 424, 429, 415 P.2d 139, 144 (1966) (plaintiff has burden of proof in establishing damages). Section 12-613, however, does not specify an evidentiary threshold a plaintiff must meet; it provides only that "the jury shall give such damages as it deems fair and just." Thus, Chad and Marsha were not required to prove they suffered a "significant loss," only that they suffered some compensable loss—however slight. Not only, as we discussed above, did they clearly do so, but there is no reason apparent from the record for the jury to have disregarded that evidence. Accordingly, in these narrow circumstances, an award of zero damages is not "fair and just." § 12-613.

¶29 For the reasons stated above, we conclude *Sedillo*'s holding is correct. A jury may not properly disregard the testimony of a witness, even an interested one, without some reason to do so that is apparent from the record.[7] GABA has pointed to nothing in the record before us nor have we found anything to suggest such a reason. As we have explained, Chad and Marsha testified unequivocally about facts demonstrating compensable loss. And nothing in the record indicates that testimony was inconsistent or unbelievable, nor was it contradicted in any way. Nor will we speculate that a reason that does not appear in the

---

[7]Additionally, nothing in *Sedillo* prohibits a jury from awarding nominal damages. *Cf., e.g., Villatoro v. Concepcion*, 671 So. 2d 216, 217 (Fla. Dist. Ct. App. 1996) ("A zero verdict for loss of consortium cannot stand where liability is conceded and there is evidence to support a verdict of nominal damages."); *Shaw v. Peterson*, 376 So. 2d 433, 434-35 (Fla. Dist. Ct. App. 1979) ("[T]he jury's verdict of zero damages for [the plaintiff] cannot stand. Since the record contains undisputed evidence of her loss of consortium as a result of [her husband's] injuries, she was entitled to receive at least nominal damages.").

record, and that GABA does not suggest exists, justified the jury's verdict. Thus, the jury was not at liberty to disregard Chad's and Marsha's testimony and fail to award them at least some damages. *See Villegas*, 16 Ariz. App. at 459, 494 P.2d at 64.

¶30 Accordingly, we conclude the trial court abused its discretion by denying Chad and Marsha's motion for a new trial on the issue of damages. *See Mullin*, 210 Ariz. 545, ¶ 2, 115 P.3d at 141; *see also Speer v. Donfeld*, 193 Ariz. 28, ¶ 9, 969 P.2d 193, 196 (App. 1998) (trial court abuses its discretion if it "base[s] its ruling on an error of law"). Therefore, we do not address Chad and Marsha's argument that GABA conceded during closing argument that they had suffered damages. We reverse the trial court's ruling and remand the case to the trial court for further proceedings consistent with this decision.

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge

E S P I N O S A, Judge, dissenting.

¶31 I respectfully disagree with the majority's conclusion because, simply stated, there is insufficient justification, both legal and factual, for interfering with the damages determination of the properly instructed jury in this case. If the jury was indeed correctly

20

charged, as neither side has disputed, what happens on retrial if another properly instructed jury, hearing the same evidence, returns the same verdict? What about a third or a fourth jury? I also question the wisdom of following the holding in *Sedillo*, 153 Ariz. at 482-83, 737 P.2d at 1381-82, a case that itself is not well grounded in any authority and appears to be an anomaly in Arizona law. Finally, viewing the evidence and reasonable inferences therefrom "in the light most favorable to upholding the jury's verdicts," as it is incumbent on us to do, *Crackel*, 208 Ariz. 252, ¶ 3, 92 P.3d at 885, it requires no speculation to justify the jury's determination and it is difficult to see how the trial court erred by refusing a new trial. The majority, however, appears to search the record and view the evidence in a light aimed at nullifying the jury's determination.

¶32　　　　　Although the majority relies on *Sedillo* to find Chad and Marsha must "be awarded 'some damages,'" the holding of that case, as the dissenting judge pointed out, is bare of any citation of authority. *See* 153 Ariz. at 485, 737 P.2d at 1384 (Jacobson, J., concurring in part and dissenting in part). Thus, it is unsurprising that this twenty-year-old decision has never once been cited for its holding. Furthermore, the single case on which the *Sedillo* majority relied does not appear to support its result. In *Quinonez*, 144 Ariz. at 198, 696 P.2d at 1347, the decedent's widower presented apparently uncontradicted expert testimony about economic loss he suffered from his wife's death.[8] Division One of this court

---

[8]The majority stretches the scant facts described in *Quinonez* when it suggests the mere reference to the children apparently being in the care of a relative at the time of trial refuted expert economic evidence on the loss of the wife. Further, although the majority

21

nevertheless upheld the jury's award of zero damages because A.R.S. § 12-613 "reserves to the jury [the authority] to award such damages as are 'fair and just'" and testimony about the Quinonezes' marriage could support the jury's conclusion that he had suffered no compensable loss "under all of the circumstances." 144 Ariz. at 198, 696 P.2d at 1347.

¶33 Moreover, not only is *Sedillo* without support, research discloses no case, either before or after it, that has overruled a jury's damages determination on the basis that every statutory beneficiary was entitled to some damages despite the jury's finding to the contrary. Indeed, this court in *State v. Sanchez*, 119 Ariz. 64, 68, 579 P.2d 568, 572 (App. 1978), stated: "We believe the intent of the legislature [in adding the word 'shall' to A.R.S. § 12-613] was to correct [a] deficiency . . . and merely authorized but did not mandate . . . a jury to award such damages."[9] If a jury is in fact mandated to award damages based on facially uncontradicted testimony, they should be so instructed.[10] Although we normally view the decisions of our sister division as persuasive and follow them, we are not bound to do so if we find compelling reasons not to or if we disagree with a decision's underlying

---

notes the wife had stated she was planning to divorce her husband, it is equally notable she was killed "on her way to bail [him] out of jail." 144 Ariz. at 198, 696 P.2d at 1347.

[9]The statute as amended reads in pertinent part: "[T]he jury *shall* give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who *may* be entitled to recover." A.R.S. § 12-613 (emphasis added).

[10]Had the jury been so instructed, it might well have awarded Marsha and Chad nominal damages as favored by the majority. However, they were not so charged, and it appears neither party ever requested such an instruction.

22

legal principles. *In re Estate of Gordon*, 207 Ariz. 401, ¶ 18, 87 P.3d 89, 93 (App. 2004);

*Danielson v. Evans*, 201 Ariz. 401, ¶ 28, 36 P.3d 749, 757 (App. 2001).

¶34        *Sedillo* is unpersuasive for additional reasons. First, contrary to the majority's

conclusion, the *Sedillo* majority clearly relied on the fact that "each of the plaintiffs" there

also suffered "possibl[e] financial losses." 153 Ariz. at 482, 737 P.2d at 1381.[11] Second, at

oral argument in this court, it was suggested that had the jury awarded damages of even $1,

"we wouldn't be here," and the majority notes that "[n]othing in *Sedillo* prohibits a jury from

awarding nominal damages" but relies solely on Florida cases to support that conclusion. In

*Sedillo*, however, "decedent's minor son from a former marriage . . . was awarded $5,000;

and Toni, his daughter, was awarded $50,000"; the appellate court deemed both awards

"extremely low," justifying a new trial on damages. *Id*. at 480, 482, 737 P.2d at 1379, 1381.

As noted by GABA's counsel at oral argument, the majority's nominal damages position

merely begs the question why, absent some statutory guidance, an award of $1 would be an

adequate, if demeaning, award but not zero. Lastly, *Sedillo* completely fails to account for,

or even acknowledge, the jury's crucial role in evaluating witnesses and evidence,

_____

[11]The *Sedillo* court also expressed concern that "the jury may have improperly considered comparative negligence principles when it determined the awards" because "the jury might have believed that the statutory beneficiaries were entitled to reduced recoveries because of the testimony regarding Nancy Sedillo's possible driving above the speed limit and her .08 blood alcohol level two hours after the accident." 153 Ariz. at 482, 737 P.2d at 1381. There is no analogous evidence here.

23

particularly in a wrongful death case and even more particularly where intangible losses are claimed. *See Hernandez v. State*, 128 Ariz. 30, 32, 623 P.2d 819, 821 (App. 1980).

¶35 I do not disagree with the majority's general pronouncement that the discretion of juries is not unfettered. But it is well established "[i]t is not our prerogative to weigh the evidence and determine the credibility of witnesses; that role belongs to the [fact-finder]." *Premier Fin. Servs. v. Citibank (Ariz.)*, 185 Ariz. 80, 85, 912 P.2d 1309, 1314 (App. 1995). Indeed, a standardized preliminary jury instruction, apparently given in this case, states: "In deciding the facts of this case, you should consider what testimony to accept, and what to reject, you may accept everything a witness says, or part of it, or none of it."[12] State Bar of Arizona, *Revised Arizona Jury Instructions (Civil)* Prelim. 5 (4th ed. 2005). Another preliminary instruction charges juries to "decide the credibility and weight to be given to *any* evidence presented in the case." *Id.* (emphasis added). Neither instruction contains any suggestion the jury must accept an uncontradicted statement merely because it is uncontradicted. Additionally, Instruction Five includes factors for the jury's consideration in "evaluating testimony," *inter alia*, "the quality of his/her memory; the witness' manner while testifying; [and] whether he/she has any motive, bias or prejudice." *Id*. Prelim. 5. But these factors would be superfluous if the jury were obligated to accept any statement not explicitly contradicted by another concrete piece of evidence. In addition, Instruction Five

---

[12]GABA's counsel noted at oral argument, without contradiction, that the jury was specifically instructed to this effect.

24

also tells the jury to "[c]onsider all of the evidence in light of reason, common sense, and experience." These standard instructions, although no longer officially sanctioned by our supreme court, *see State v. Logan*, 200 Ariz. 564, ¶ 12, 30 P.3d 631, 633 (2001), are routinely given to juries before any evidence is presented and generally not discussed with the lawyers or debated because they are long-standing and accepted principles. In view of today's decision, they apparently are no longer illustrative of the law.

¶36        The majority today fashions a new, unprecedented rule of appellate review that says: "There must be support in the record, however slight, for a jury's decision to disregard a witness's testimony."[13] That pronouncement, however, ignores the reality that some things may readily evade the record, things like attitude, such as hostility or insincerity; tone of voice and inflection; manner of speaking, such as hesitation or glibness; facial expression, such as excessive blinking or eye rolling; body language, such as shrugging, squirming, or perspiring; and other subtle indicators not expressed in words. This is a bedrock principle underlying appellate deference to the fact-finder, be it jury or judge. *See Hutcherson v. City*

---

[13]The majority cites three Industrial Commission cases in support of its contention that the record must contain evidence to explain a jury's apparent disregard of a witness's testimony. However, the entire statutory scheme that provides workers' compensation is designed to be interpreted liberally to protect injured claimants. *See Hypl v. Indus. Comm'n*, 210 Ariz. 381, ¶ 18, 111 P.3d 423, 429 (App. 2005) (workers' compensation policy construes the law liberally to employees' benefit); *Self v. Indus. Comm'n*, 192 Ariz. 399, ¶ 6, 966 P.2d 1003, 1005 (App. 1998). Until today's decision, I find no authority requiring that testimony in a wrongful death action be subject to similarly liberal treatment to ensure compensation for all parties seeking damages.

*of Phoenix*, 192 Ariz. 51, ¶ 12, 961 P.2d 449, 451 (1998) ("Our reason for deference is clear. 'The judge sees the witnesses, hears the testimony, and has a special perspective of the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed record.'"), *quoting Reeves v. Markle*, 119 Ariz. 159, 163, 579 P.2d 1382, 1386 (1978); *Anderson v. Nissei ASB Mach. Co.*, 197 Ariz. 168, ¶ 23, 3 P.3d 1088, 1095 (App. 1999) ("Having heard the witnesses and seen the evidence, the jury was in the best position to judge which witnesses to believe . . . . We defer to [its] determination.").

¶37 The majority seeks to justify the new rule it has created by asserting that a jury may not "arbitrarily disregard a witness's testimony—instead, [its] decision to do so must have some record support." However, this significantly distorts our standard of review. We do not review a jury's evaluation of the evidence for arbitrariness or capriciousness; our only role is to review the record to determine if facts, and *any* reasonable inference from those facts, provide support for the jury's decision. *See Salt River Project Agric. Improvement & Power Dist. v. Miller Park, L.L.C.*, 504 Ariz. Adv. Rep. 8, ¶ 37 (Ct. App. May 15, 2007); *see also Gonzales v. City of Phoenix*, 203 Ariz. 152, ¶ 2, 52 P.3d 184, 185 (2002); *Flanders v. Maricopa County*, 203 Ariz. 368, ¶ 5, 54 P.3d 837, 840 (App. 2002); *Warrington v. Tempe Elementary Sch. Dist. No. 3*, 197 Ariz. 68, ¶ 4, 3 P.3d 988, 989 (App. 1999). "We must not 'take the case away from the jury' by combing the record for evidence supporting a conclusion or inference different from that reached here." *Hutcherson*, 192 Ariz. 51, ¶ 27, 961 P.2d 449, 454 (1998), *quoting Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29,

26

35, 64 S. Ct. 409, 412 (1944); *see also Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 39, 945 P.2d 317, 350 (App. 1996) ("[A] reviewing court 'must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to disregard the jury's verdicts and remand the case for a new trial.'"), *quoting Toner v. Lederle Lab.*, 828 F.2d 510, 512 (9th Cir. 1987). From the evidence presented in this case, the jury could reasonably have found that the only compensable loss proven was Elaine's.

¶38    If "slight" evidence must now appear in the record to justify a jury's decision to discount testimony, there was far more than that here from which the jury could have inferred that only Elaine, and not the children, suffered a significant loss. Both children had little to say about their personal loss, but spoke freely about the effect of their father's death on Elaine. Elaine did not mention any effect on the children that she had noticed from the loss of their father. The jury was presumably aware, through "common sense" and "experience," that a death may result in sadness and grief, but does not necessarily have a profound or the same impact on different persons' lives. *Revised Arizona Jury Instructions, supra*, Prelim. 5. The jury could also have drawn permissible inferences from the children's demeanor and indisposition to speak under oath about the magnitude of their loss and found that the somewhat minimal nature of their testimony was a more accurate barometer of their claims.

27

¶39 Additionally, it could have appeared to the jury that some of the testimony suggested the children's losses were limited to mere annoyance and inconvenience from the claimed new responsibility for the care of their mother. Marsha testified about how difficult her life was after she had to assume caring for Elaine and about everything she had to do for her. But Elaine testified John had been gone for a week on a bicycle trip only one week before his death, and he had gone out and ridden his bicycle every evening and weekend. She did not indicate or suggest that the children had been required to care for her when John was away on long-distance rides. Elaine also testified that John intended, at retirement, to ride a bicycle across country while she followed him in a vehicle. Thus, this testimony could readily have raised doubts in jurors' minds and enervates the majority's assertion that nothing in the record suggests the testimony was inconsistent or contradicted "in any way."

¶40 Counsel for the family stressed in closing argument that the plaintiffs "have the burden of proof with regard to the damages" and asked the jury to award "the damages proved by the evidence to your satisfaction." Indeed, this has always been the law in regard to damages. *See Wilmot v. Wilmot*, 203 Ariz. 565, ¶ 22, 58 P.3d 507, 513 (2002) (wrongful death verdict is the sum of damages for each beneficiary who asserts and establishes harm); *Nunez v. Nunez*, 25 Ariz. App. 558, 562, 545 P.2d 69, 73 (1976), ("'[A]pportionment [of damages for wrongful death] is for the jury to return. This will, of course, exclude any recovery in behalf of such as show no . . . loss.'"), *quoting Gulf, Colo. & Santa Fe Ry. Co. v. McGinnis*, 228 U.S. 173, 176, 33 S. Ct. 426, 427 (1913). Counsel also stated, "This is not

28

a case in which . . . the law allows for sympathy," and emphasized that "each loss is unique" while explaining Chad and Marsha "didn't want to have to talk about [their] loss."[14] Thus, there were abundant grounds upon which the jury, while apportioning the damages resulting from John's death among Elaine, Chad, and Marsha, could have determined only Elaine had carried her burden of proof of showing a compensable loss. *See Wilmot*, 203 Ariz. 565, ¶ 22, 58 P.3d at 513, *Nunez*, 25 Ariz. App. at 562, 545 P.2d at 73. Significantly, the trial court too heard the evidence and declined to set aside the jury's verdict or grant a new trial.

¶41 The majority emphasizes GABA's decision not to discredit or minimize the witnesses, but that may well have been an appropriate defense strategy, given the children's testimony and the well-established principle that a trier of fact is not bound to accept the uncontradicted testimony of an interested witness. *See Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, ¶ 12, 9 P.3d 314, 318 (2000) (jury not compelled to believe uncontradicted evidence of interested party); *Nystrom v. Mass. Cas. Ins. Co.*, 148 Ariz. 208, 214, 713 P.2d 1266, 1272 (App. 1986) (trier of fact need not accept uncontradicted testimony from interested witnesses); *see also Premier Fin.*, 185 Ariz. at 86, 912 P.2d at 1315 (fact-finder "is not bound to accept even the uncontradicted evidence of a disinterested party," to say nothing of interested ones). The majority states it does not disagree with "that sensible rule" but then essentially disregards it by isolating qualifying factors in each of these cases to support the new rule it has created. But jurors are not instructed they may question the

---

[14]GABA's counsel did not mention damages in his closing argument.

testimony of witnesses only if other evidence permits them to; indeed, such a rule improperly constrains, if not abrogates, the heart of the jury's discretion and function. *See Logerquist v. McVey*, 196 Ariz. 470, ¶ 51, 1 P.3d 113, 130 (2000) ("[o]ur constitution preserves the 'right to have the jury pass upon questions of fact by determining the credibility of witnesses and the weight of conflicting evidence'"), *quoting Burton v. Valentine*, 60 Ariz. 518, 529, 141 P.2d 847, 851 (1943). "It is the jury's function to determine accuracy, weight, or credibility" of evidence. *Id.* ¶ 52. "Reduction or obliteration of the jury function may be seen by some as the ultimate tort reform, but it is one prohibited by our organic law." *Id.* ¶ 51.

**¶42** Lastly, I do not suggest a jury should be permitted to disregard evidence "regardless of whether there is some reason to do so," as the majority contends. Here, the jury was only free to discredit or discount testimony based upon all of the evidence, which included its assessment of each witness's testimony in light of the other testimony in the case and the jury's collective common sense and experience, as it was properly instructed in accordance with the law, at least the law the trial court was entitled to rely on before today's decision. *See Anderson*, 197 Ariz. 168, ¶ 23, 3 P.3d at 1095; *Premier Fin.*, 185 Ariz. at 80, 912 P.2d at 1314.

**¶43** In sum, under Arizona's wrongful death statute, the jury was authorized to award whatever damages it "deem[ed] fair and just," § 12-613, and to distribute that award to the statutory beneficiaries "in proportion to their damages," § 12-612(C). As the majority

hollowly acknowledges, determining noneconomic, intangible losses related to the death of a family member "is peculiarly the jury's function." *Hernandez*, 128 Ariz. at 32, 623 P.2d at 819. I would find the trial court properly followed and applied that fundamental principle of our jurisprudence here.

_____

PHILIP G. ESPINOSA, Judge

31